Carolyn P. **HARVEY**

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,**
Appellant,

Oliver Battle, et al.

Carolyn P. **HARVEY,** Appellant,

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,**
et al.

Nos. 85-6190, 85-6220.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 9, 1986.

Decided March 31, 1987.

Richard W. Beebe, with whom Sara E. Lister, Carol A. Sigmond, Richard McBurrows and Robert J. Kniaz, Washington, D.C., were on brief, for Washington Metropolitan Area Transit Authority, appellant in No. 85–6190 and cross-appellee in No. 85–6220.

Browne L. Kooken, Upper Marlboro, Md., was on brief, for Carolyn P. Harvey, Washington, D.C., appellee in No. 85–6190 and cross-appellant in No. 85–6220.

Joseph Patrick Clancy, with whom Richard L. Fritts, Chevy Chase, Md., was on brief, for Shirley A. Batchelor, cross-appellee in Nos. 85–6190 and 85–6220.

Eugene L. Chrzanowski, Washington, D.C., was on brief, for GEICO, cross-appellee in Nos. 85–6190 and 85–6220.

Before STARR and D.H. GINSBURG, Circuit Judges, and McGOWAN, Senior Circuit Judge.

STARR, Circuit Judge:

The Washington Metropolitan Area Transit Authority ("WMATA") appeals from a district court judgment entered upon a jury verdict. The verdict followed the trial of an action brought by Carolyn Harvey, in which she charged that a WMATA employee's negligent operation of a bus shortly after she boarded resulted in her sustaining serious injuries. WMATA attacks the District Court's denial of its motions for a directed verdict and judgment notwithstanding the verdict. Upon review of the record, we are satisfied that ample evidence supported the verdict against WMATA. We therefore affirm.

## I

The events that gave rise to this appeal occurred on the morning of February 27, 1981. The setting was Naylor Road in Washington, D.C. At the spot where Ms. Harvey's fate crossed paths with that of Oliver Battle, the WMATA bus driver, Naylor Road runs one way north, and consists of two lanes that narrow where Naylor Road intersects with 25th Street, at which a stop sign stands. On the right hand side, Naylor Road borders a shopping center, one entrance to which lies about twenty-five feet north of the bus stop where Ms. Harvey boarded and 100 feet south of Naylor Road's intersection with 25th Street. Along the left side of Naylor Road at the time in question was a phalanx of parked cars.

Ms. Harvey was waiting for the bus when it pulled up to the bus stop, with Mr. Battle behind the wheel. Harvey stepped aboard, her fare in one hand, her lunch bag in the other. After depositing her fare in the farebox, a tombstone-shaped structure that rose about three feet from the bus floor, Ms. Harvey, herself only five feet tall, turned to face the rear of the bus. Before she could take more than one step toward a seat, the bus stopped hard, whereupon Ms. Harvey violently lurched backward into the farebox. The top of the farebox struck her about mid-back. Shaken, she made her way to the seat behind the driver and sat while he radioed for the police and an ambulance.

From his vantage point in the driver's seat, Battle was in a position to relate the mishap within the bus to events without. According to Battle, as he pulled away from the bus stop, he espied in his rearview mirror a small blue car travelling alongside the bus, to the rear of the bus's left front wheel. Battle then turned his attention to the road ahead, and seconds later the blue compact veered in front of the bus, its right rear bumper clipping the bus's bumper on the left front. Battle, whose foot was poised on the brake pedal, hit the brakes (to use his words) "hard." That sharp halt propelled Ms. Harvey backward into the farebox. Battle immediately

pulled over to the curb and parked. In the meantime, the blue car fled the scene.

John Evans, a motorist positioned a few cars behind the bus when the collision occurred, corroborated much of Battle's account. Evans testified that before the bus slowed at Ms. Harvey's stop, the small blue car was situated directly behind the bus, in the right lane of Naylor Road. According to Evans, as the bus slowed at the stop, the blue car pulled into the left lane and accelerated around the bus in an apparent attempt to reach the driveway entrance to the shopping center before the bus did. Without signalling, the blue car turned in front of the bus, brushing the bus's bumper. Then, in an apparent change of heart, the driver of the offending car continued up Naylor Road rather than pulling into the shopping center parking lot. Mr. Evans followed the car long enough to determine its license plate number, which he dutifully recorded.

Almost three years later, in February 1984, Ms. Harvey brought actions against WMATA, Battle, GEICO (Harvey's insurance company), and Shirley Batchelor, allegedly the owner of the blue compact. Harvey, a Maryland resident, filed her actions in the United States District Court for the District of Columbia, claiming jurisdiction over WMATA and Battle by virtue of D.C.Code Ann. § 1–2439 (1981),[1] and over GEICO and Batchelor, both Maryland residents like Harvey, by virtue of pendent jurisdiction, *see, e.g., Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). WMATA in turn filed a third-party claim against Batchelor, contending that the driver of her car was responsible for the injuries Ms. Harvey sustained.

The action soon dwindled. Before trial, the District Court dismissed Harvey's claims against Batchelor and GEICO, concluding in a memorandum opinion that the court should not exercise pendent jurisdiction over those claims. *Harvey v. Wash-*

*ington Metropolitan Transit Authority,* No. 84–00561 (D.D.C. Sept. 6, 1984) (Memorandum Order), Supplemental Record Excerpts at 26. During trial and prior to submission of the case to the jury, the court directed a verdict in favor of Batchelor and against WMATA on the latter's third-party claim. The court denied, however, WMATA's motion for a directed verdict in its favor on Harvey's claims. Thus, the jury had occasion to consider only Harvey's claim against WMATA and Battle. It reached a verdict in Harvey's favor for $20,000. The District Court denied WMATA's subsequent motion for j.n.o.v. and entered judgment on the verdict.

In these appeals, WMATA faults the District Court for rejecting its motions for directed verdict and j.n.o.v., maintaining that no evidence was adduced to support the jury's finding of negligence. Ms. Harvey is, of course, satisfied with the favorable verdict, but argues that if the judgment is set aside, we should reverse the trial court's dismissal of her claims against Batchelor and GEICO.

## II

WMATA confronts an implacable roadblock in seeking to have the judgment entered upon a jury verdict set aside. In reviewing the District Court's denial of WMATA's motions for directed verdict and j.n.o.v, our task is emphatically not to second guess the jury. On the contrary, the appropriate standard for a reviewing court, as well as the trial court, recognizes the respect due to the factfinding abilities of a body of impartial laypersons who have been correctly instructed on the governing legal standards:

> Unless the evidence, along with all the inferences reasonably drawn therefrom, when viewed in the light most favorable to the plaintiffs, is such that reasonable jurors in fair and impartial exercise of

1. Section 1–2439 provides in relevant part:
 The United States district courts shall have original jurisdiction, concurrent with the courts of Maryland and Virginia, of all actions brought by or against the [Washington Metropolitan Area Transit] Authority....

D.C.Code Ann. § 1–2439 (1981). *See also id.* § 1–2431, at ¶ 80 (providing that Authority "shall be liable for ... its torts and those of its ... employees ... committed in the conduct of any proprietary function, in accordance with the law of the applicable signatory....").

their judgment could not reasonably disagree in finding for the defendant, the motion must be denied.

*Vander Zee v. Karabatsos,* 589 F.2d 723, 726 (D.C.Cir.1978) (citations omitted) (quoting *Alden v. Providence Hospital,* 382 F.2d 163, 165 (D.C.Cir.1967)), *cert. denied,* 441 U.S. 962, 99 S.Ct. 2407, 60 L.Ed.2d 1066, (1979); *see also Boyko v. Washington Metropolitan Area Transit Authority,* 468 A.2d 582, 583 (D.C.App.1983); *Fells v. Washington Metropolitan Area Transit Authority,* 357 A.2d 395 (D.C.App. 1976). *See generally Tavoulareas v. Piro,* 817 F.2d 762, 776 (D.C.Cir.1987).

In this case, we are called upon to decide whether so little evidence of negligence existed that no reasonable jury drawing all inferences in favor of Ms. Harvey could have concluded that WMATA's employee, Mr. Battle, was negligent.[2] "Negligence" in this case refers to breach of the duty of "care and caution which a bus driver of reasonable skill, foresight, and prudence could be fairly expected to exercise." *D.C. Transit System, Inc. v. Carney,* 254 A.2d 402, 403 (D.C.App.1969).[3] Bearing this standard in mind, we are persuaded that the record contains ample evidence from which reasonable jurors reasonably could have concluded that Battle acted negligently.

To begin with, from all accounts many traffic patterns converge on the stretch of Naylor Road where Ms. Harvey's injuries occurred. The bus stops along the right side of the street, about 25 feet from the shopping center entrance. Tr. at 31. It appears that drivers enter the shopping center's parking lot not only to shop but also to leave their cars while they take public transportation downtown. *Id.* at 29. Just 100 feet beyond that driveway lies the

intersection with 25th Street where the two lanes of Naylor are more narrow. *Id.* at 31–32. Thus, rather than presenting a broad swath of street with a smooth flow of traffic, the evidence depicts something of an obstacle course, with cars turning into the shopping center, cars exiting it, and drivers in the two lanes jockeying for a superior position at the corner of Naylor and 25th. A reasonable jury could have inferred that a reasonable bus driver placed in this situation would exercise particular caution, commensurate with the perils posed by such a traffic setting. *See Carney,* 254 A.2d at 403.

WMATA's driver, moreover, was aware of both the dangers generally posed by this situation and the specific events that triggered the accident. According to his own testimony, Battle had been driving the route of which this block of Naylor was a part four times a day, five days a week for at least two months. Tr. at 117–18. Battle further testified that although he had received no formal instruction from WMATA on the subject, as a practice he kept one foot on the brake pedal when a car was situated on the left side of the bus and was likely to turn in front of the bus. *Id.* at 121. In fact, Battle followed that practice on the morning of the accident as soon as he first saw the blue compact car pulling alongside him. *Id.* at 118. The evidence in the record thus could reasonably be interpreted to the effect that this was not a situation that Battle "could not reasonably have anticipated," *Carney,* 254 A.2d at 404; quite to the contrary, Battle actually *did* anticipate it. Since Battle was conscious of the danger before the accident, the jury could reasonably conclude that the sudden, jolting stop was not "the only action possible" for Battle to take. *Id.*[4]

2. There is no dispute that WMATA owed a duty of care to Harvey. Nor is there any dispute on appeal that Battle's operation of the bus caused Ms. Harvey's injuries. The only question, therefore, is Battle's adherence to the requisite standard of care.

3. The compact creating WMATA provides that actions such as this are governed by the "law of the applicable signatory (including rules on conflict of laws)," D.C.Code Ann. § 1–2431, at ¶ 80.

The signatories are Maryland, Virginia and the District of Columbia. *See id.* at ¶ 1(d). All parties have treated this case as one appropriately governed by D.C. law and we can discern no basis for quarreling with that approach.

4. Thus, the record indicates a situation significantly different from that of *Carney,* 254 A.2d 402, on which WMATA heavily relies for its argument that the District Court should have directed a verdict in its favor. In *Carney,* the

The record not only supports a conclusion that the sudden stop was unnecessary; it also suggests that the stop was unnecessarily abrupt. For one thing, Battle's riding with one foot on the brake pedal and the other (presumably) on the accelerator makes it likely that the bus and its occupants experienced no moment of gradual deceleration, as tends to occur when a driver lifts one foot from the gas pedal and moves it over to the brake. For another, Ms. Harvey testified that in her experience riding buses, she had never witnessed a braking sudden and hard enough to cause a passenger to fall against the farebox. Tr. at 85. *Cf. Boyko*, 468 A.2d at 583–85. Finally, the jury reasonably could have inferred that the bus's halt was abnormally abrupt from evidence that Ms. Harvey sustained injuries requiring immediate hospitalization followed by four years of treatment, even though she only fell backward a short distance before hitting the farebox. Tr. at 49–50, 167.

In addition to evidence about Battle's reaction to the blue car's maneuver, the jury heard evidence tending to suggest that Battle was unreasonably inattentive to Ms. Harvey's vulnerable situation inside the bus. Battle testified that WMATA policy forbade drivers from leaving a bus stop until boarding passengers were behind the standee line, which lies about ten inches behind the farebox. Tr. at 120. From Harvey's testimony that she was thrown backwards into the farebox an instant after depositing her fare (and the testimony as to

the short time between her boarding and Battle's stopping), the jury reasonably could have inferred that Ms. Harvey had not traversed the line before the bus started, thus leaving Harvey vulnerably separated from a seat or other point of relative safety.[5] There was thus ample evidence, which WMATA did not contradict, to justify the conclusion that in pulling away from the bus stop before Ms. Harvey had crossed out of the zone of vulnerability, as it were, Mr. Battle created an unreasonable risk of injury which his abrupt response to the blue car's turn brought to fruition.

In sum, under the evidence adduced at trial, a reasonable jury could have found that Battle's conduct, viewed as a whole, was negligent. Thus, the District Court correctly denied WMATA's motions for a direct verdict and j.n.o.v.

### III

Ms. Harvey expressly conditioned her appeal of the District Court's dismissal of Batchelor and GEICO from this action upon our setting aside her judgment against WMATA. Inasmuch as we affirm that judgment, we obviously have no occasion to reach her challenges. *See H.L. Peterson Co. v. Applewhite*, 383 F.2d 430, 433 n. 2 (5th Cir.1967) (Bell, J.).

*Affirmed.*

---

plaintiff sustained injuries while riding a bus when the bus stopped suddenly to avoid hitting a car that turned in front of the bus without signalling. The car's maneuver in *Carney* was wholly unforeseeable. The car travelled across two full lanes of traffic, unlike the blue car in our drama, which pulled from directly behind the bus operated by Mr. Battle in an evident attempt to overtake it. The bus driver in *Carney* first noticed the car when it was still 20 to 25 feet to the rear of the bus, *id.*, while in this case Battle noticed the car when it was already directly alongside the bus, to the rear of the bus's front wheel. In *Carney*, the bus driver testified that he did not believe the car that cut off the bus represented any such danger when he first noticed it. *Id.* Here, in contrast, Battle testified that from the moment he saw the offending car he poised his foot on the brake, the action

he customarily took when he thought it likely that a car would try to turn in front of him. That likelihood was, of course, indicated by the fact that the driveway near the bus stop was an entrance to a shopping center.

5. It is unclear that the jury could properly have considered this policy conclusively to establish the governing standard of care in this situation. *Cf. Princemont Construction Corp. v. Smith*, 433 F.2d 1217, 1220 (D.C. Cir.1970); *Sledd v. WMATA*, 439 A.2d 464, 469 (D.C.App.1981). We note in passing, however, that the requirement that standing passengers be behind the standee line is not only a matter of WMATA's policy, but also one of federal law. *See* 49 C.F.R. §§ 392.-9(c)(1), 393.90; *see also* 49 U.S.C. § 11,101 (1982).