# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 17-30142

————

United States Court of Appeals
Fifth Circuit

**FILED**

October 26, 2018

Lyle W. Cayce
Clerk

MICHAEL ASHFORD,

        Plaintiff - Appellant Cross-Appellee

v.

AEROFRAME SERVICES, L.L.C.,

        Defendant - Appellee Cross-Appellant

AVIATION TECHNICAL SERVICES, INCORPORATED,

        Defendant - Appellee

_____

consolidated with 17-30483

MICHAEL ASHFORD,

        Plaintiff - Appellant

v.

AVIATION TECHNICAL SERVICES, INCORPORATED,

        Defendant - Third Party Plaintiff - Appellee

v.

ROGER A. PORTER,

        Third Party Defendant - Appellant

No. 17-30142 c/w
No. 17-30483

―――――――――――

Appeals from the United States District Court
for the Western District of Louisiana

―――――――――――

Before DAVIS, JONES, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Plaintiff–Appellant Michael Ashford commenced this litigation in October 2013, bringing claims under Louisiana law in Louisiana court against Defendant–Appellee Aeroframe Services, LLC, and Defendant–Appellee Aviation Technical Services, Inc. (ATS). Both Ashford and Aeroframe are Louisiana citizens. The litigation proceeded in state court for some months until ATS removed to federal court on the theory that Ashford and Aeroframe had settled. On the contrary, Ashford's claims remained pending against Aeroframe.

As the Supreme Court has emphasized, federal diversity-of-citizenship jurisdiction "depends upon the state of things at the time of the action brought." *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570–71 (2004) (quoting *Mollan v. Torrance*, 22 U.S. (9 Wheat.) 537, 539 (1824)). "This time-of-filing rule is hornbook law (quite literally) taught to first-year law students in any basic course on federal civil procedure." *Id.* (footnote omitted). And the law is no different in cases removed from state court. "Consistent with general principles for determining federal jurisdiction, . . . diversity of citizenship must exist *both* at the time of filing in state court *and* at the time of removal to federal court." *Coury v. Prot*, 85 F.3d 244, 248–49 (5th Cir. 1996) (emphases added); *see also, e.g.*, *Stevens v. Nichols*, 130 U.S. 230, 231–32 (1889); 14C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3723 & n.16 (4th ed. updated Sept. 2018).

No. 17-30142 c/w
No. 17-30483

There was no diversity of citizenship at the time this suit was filed. At that point, two of the parties, Plaintiff Michael Ashford and Defendant Aeroframe Services, were Louisiana citizens. It is true, of course, that courts must "look beyond the pleadings, and arrange the parties according to their sides in the dispute." *City of Indianapolis v. Chase Nat. Bank of City of N.Y.*, 314 U.S. 63, 69 (1941). It is also true that the magistrate judge in this case found that Ashford and Aeroframe became aligned as the litigation progressed. But the magistrate judge specifically *rejected* the argument that the two parties were aligned from the beginning. This latter factual finding has not been appealed. So even accounting for the possibility of realignment, "the state of facts that existed at the time of filing" failed to meet the jurisdictional prerequisite of complete diversity. *Grupo*, 541 U.S. at 571.

According to the dissenting opinion, we "recognized" in *Zurn Industries, Inc. v. Acton Construction Co.*, 847 F.2d 234 (5th Cir. 1988), that realignment of the parties "is an exception" to the time-of-filing rule. With respect, *Zurn* says no such thing. The cited portion of the opinion merely describes the principle, familiar from *City of Indianapolis*, that federal courts are not bound by the labels the parties give themselves in the pleadings. *See id.* at 236. Nowhere did *Zurn* obviate the hornbook law that diversity must exist "at the inception of the lawsuit." *Id.* at 238. To the contrary, *Zurn*'s jurisdictional analysis refused to consider post-commencement events like "cross-claims and counterclaims filed by the defendants," and instead held that the parties' alignment for jurisdictional purposes "is to be determined by the plaintiff's principal purpose *for filing suit*." *Id* at 237 (emphasis added). Because the magistrate judge found that Ashford's "principal purpose" for suing Aeroframe was legitimate (a finding that no one appeals), fidelity to *Zurn* requires relinquishing the case.

3

No. 17-30142 c/w
No. 17-30483

The dissenting opinion also relies on a provision of the removal statute, which contemplates that a suit may "become removable" after it is filed. 28 U.S.C. § 1446(b)(3). No doubt, that is sometimes true. For example, a suit may "become removable" when a plaintiff amends the complaint to add a federal cause of action. *See* § 1331. It may become removable when a defendant discovers that he qualifies as a federal officer. *See* § 1442(a)(1); *Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 607 (5th Cir. 2018). And it may even become removable when the only nondiverse defendant is formally dropped from the suit. *See* § 1332(a); *Grupo*, 541 U.S. at 572–73; *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68–69 (1996). But none of these circumstances obtains here.

Finally, the dissenting opinion cites *Peters v. Standard Oil Co. of Texas* for the proposition that "any realignment of parties should take place *before* jurisdiction is decided." That assertion seems undoubtedly correct. In *Peters*, for example, our court examined the facts in existence at the time of filing and concluded that the "real interest" of one defendant aligned him with the plaintiffs. 174 F.2d 162, 163 (5th Cir. 1949). We therefore treated him as a plaintiff in the diversity analysis. *See id.* Likewise, a proper jurisdictional analysis in this case would begin by looking for potential realignment. But again, unlike in *Peters*, the magistrate judge here found that Ashford and Aeroframe were (at least initially) adverse. And because that plaintiff and that defendant are both citizens of Louisiana, it cannot be said that diversity of citizenship existed "at the time of filing in state court." *Coury*, 85 F.3d at 248–49.

No. 17-30142 c/w
No. 17-30483

Accordingly, the district court's judgment is VACATED, and the matter is REMANDED with instructions to remand to state court.[1]

---

[1] Because the district court lacked jurisdiction, all its orders are vacated. This resolves the consolidated case.

5

No. 17-30142 c/w
No. 17-30483

W. EUGENE DAVIS, Circuit Judge, concurring in the judgment:

I would conclude that diversity jurisdiction is lacking in this matter because the record does not contain a sufficient basis to find that Ashford and Aeroframe are not adverse parties. Although our precedent provides that a case can become removable under federal diversity jurisdiction if the plaintiff and the nondiverse defendant enter into an irrevocable settlement agreement, *Vasquez v. Alto Bonita Gravel Plant Corp.*, 56 F.3d 689, 693 (5th Cir. 1995), no such agreement was ever produced in this case. "[A]bsent such an irrevocable settlement, the nondiverse defendant remain[s] a party to the case." *Id.* at 690.

Furthermore, assuming that realignment is permitted to establish diversity jurisdiction upon removal, it was improper to realign Aeroframe as a plaintiff in this matter based on an email generated by Ashford's counsel. I acknowledge that diversity jurisdiction cannot be manufactured "by the parties' own determination of who are plaintiffs and who defendants." *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69 (1941). However, we cannot cast aside the rule that the alignment of parties "must be ascertained from the 'principal purpose of the suit' and the 'primary and controlling matter in dispute.'" *Id.* at 69–70 (citations omitted).[1]

In his petition, Ashford sued Aeroframe, his former employer, under the Louisiana Last Paycheck Law, La. R.S. 23:631, for unpaid wages and related damages. Ashford also sued ATS for negligence, interference with contract, and unfair trade practices and again sought as damages unpaid wages and

---

[1] We have noted that "[t]he determination of the 'primary and controlling matter in dispute' . . . is to be determined by plaintiff's principal purpose for filing [his] suit." *Zurn Industries, Inc. v. Acton Const. Co., Inc.,* 847 F.2d 234, 237 (5th Cir. 1988).

No. 17-30142 c/w
No. 17-30483

other lost benefits, as well as future wages. Thus, the principal purpose for the filing of Ashford's suit was to recover his unpaid wages and related damages resulting from the termination of his employment by Aeroframe. In its answer, Aeroframe denied the allegations in Ashford's petition and further prayed for judgment in its favor and against Ashford. The record shows that since the filing of its answer, Aeroframe itself has made no assertions, admissions, and/or stipulations inconsistent with its answer.[2] Moreover, in its appellate brief, Aeroframe specifically asserts that it "has never agreed that statutory penalties are owed to Mr. Ashford, even if he can establish he is owed any back owed wages (which Aeroframe has disputed and continues to dispute)." Consequently, the necessary "collision of interest," *City of Indianapolis*, 314 U.S. at 69, exists between Ashford and Aeroframe such that no realignment is warranted.[3]

Judge Jones takes the position that an email, which was drafted by Ashford's counsel to Ashford and other former employees of Aeroframe whom counsel is representing, reflects "Aeroframe's promise to pay Ashford" and "states that all of Ashford's requested relief ('wages, penalties, and attorney's fees') would be stipulated to by Aeroframe." Judge Jones posits that the email constitutes "proof that Aeroframe and Ashford had the same 'ultimate interests' in the outcome of the action."

---

[2] Further corroborating that Ashford and Aeroframe continue to be adverse is that Aeroframe has separate counsel in this appeal, who has briefed the issues and argued on behalf of Aeroframe.

[3] This case is unlike *City of Indianapolis* wherein the plaintiff sought a judgment declaring the validity and binding nature of a lease, and the realigned defendant denied "[i]n its answer . . . that it had ever contended or admitted that the said . . . lease was not and is not a valid and binding obligation upon the defendants." 314 U.S. at 71.

No. 17-30142 c/w
No. 17-30483

My problem with such "proof" is that the email was drafted by Ashford's counsel. We have nothing from Aeroframe confirming a promise to pay and/or to stipulate to Ashford's requested relief. This one-sided email would certainly not qualify as an irrevocable settlement under *Vasquez*, nor is it sufficient proof under *City of Indianapolis* that Ashford and Aeroframe are aligned.

For these reasons, I respectfully concur.

No. 17-30142 c/w
No. 17-30483

EDITH H. JONES, Circuit Judge, dissenting:

The majority today refuse to realign the parties according to their true and ultimate interests in the litigation, leading them to incorrectly conclude that this court lacks diversity jurisdiction.

Even more disturbing, the majority refuse to discuss the Rule 11 sanctions request by appellee Aviation Technical Services predicated on the bad faith filing by its opponents of cross-summary judgment motions as an end-run around unfavorable district court rulings, and their subsequent contrived appeal to this court. I see nothing in the Rule preventing the district court from imposing sanctions despite the (erroneous) dismissal of this case. I respectfully dissent.

Because realignment of the parties and possible sanctions involve highly fact-specific inquiries, and because the majority opinion does not detail the history of the underlying litigation, it is necessary to elaborate on the factual and procedural background of this case before proceeding to an analysis of diversity jurisdiction.

## BACKGROUND

### I.     Facts

Aeroframe Services, LLC ("Aeroframe") used to have an aircraft maintenance, repair, and overhaul business at Chennault International Airport in Louisiana. Due to financial difficulties, Aeroframe began to look for a partner or purchaser in 2012. Aeroframe was in default on a $9,775,500 note held by EADS, Inc., which was secured by Aeroframe's equipment. In November 2012, Aeroframe entered into a non-disclosure agreement ("NDA") with Aviation Technical Services ("ATS") for the purpose of discussing

9

partnership.  This agreement stated that both parties would disclose certain confidential information to each other and "any such information will be kept secret and strictly confidential."  ATS decided it was not interested.  In February 2013, Aeroframe offered to sell the company to ATS.  Again, ATS declined.  Roger Porter was the owner and manager of Aeroframe, and was Aeroframe's primary representative in these negotiations.  Along with the acquisition of Aeroframe, Porter was also seeking employment or a consulting position with ATS.

In May 2013, ATS and Aeroframe entered into another NDA.  This agreement only prevented *Aeroframe* from disclosing confidential information.  This NDA stated that it was the "entire agreement of the parties in respect to the subject matter hereof."  In June 2013, the parties entered into an Exclusivity Agreement, which among other things, prevented Aeroframe from soliciting any similar proposals for at least 30 days.  The Exclusivity Agreement referenced an NDA: "Other than the NDA, which shall remain in full force and effect, this Agreement expresses the entire understanding of the parties with respect to the subject matter of the Agreement."  As noted by the district court, the Agreement does not clearly specify which NDA it references.

ATS and Porter agree that a key component for any transaction would be the settlement of the EADS note.  ATS's CFO testified that Porter asked for a loan to buy the note, but they said no.  He also testified that Porter told ATS that they would have to buy it because he would not be able to.

In July, Porter began negotiating with another aircraft maintenance outfit named AAR.  ATS sent Porter a proposed consulting agreement on July 11, which he rejected.  On July 12, Aeroframe's attorney emailed ATS the

No. 17-30142 c/w
No. 17-30483

contact information for EADS's counsel. ATS and EADS began negotiating the price of the note. On July 17, ATS sent Porter a revised agreement and informed Porter that it knew he had "other potential buyers" and needed to know what Porter was thinking. AAR executed a Letter of Intent on July 19, which contained a 30 day exclusivity period. The same day, Porter texted an employee of ATS stating that he "started a dialog with another company" and advised AAR to pull out its people who had been at ATS.

Negotiations between Porter and ATS did not end there. Porter and the CEO of ATS emailed about Porter's possible employment, and the CEO sent Porter an outline of an employment agreement on July 20. Porter told the COO of ATS that he was in an exclusive agreement with another party on July 22. Porter later confirmed to the COO that AAR was the other potential buyer.

As noted above, ATS began negotiating with EADS for the note earlier in July. These parties continuously bargained until they agreed on a price on July 23 and finalized the note purchase on July 30th. ATS then informed Porter, Aeroframe, and AAR. The next day, ATS and AAR contacted the Chennault Airport about taking over Aeroframe's lease. Porter visited the airport with AAR. On the same day, ATS offered Porter employment, which he accepted. On August 1, ATS's COO asked Porter to keep him updated about communications from AAR and Porter said he would. Later that day, the COO texted Porter asking about a rumored meeting between AAR and Chenault Airport. Porter did not inform the COO that he had attended the meeting. In fact, Porter represented that he was having dinner with the executive director of Chennault Airport that evening, but he met with AAR instead. That evening he signed an employment contract with AAR.

11

No. 17-30142 c/w
No. 17-30483

When the president of the board of commissioners for Chennault Airport learned that Porter had signed an employment agreement with AAR, he called an emergency meeting for August 3. At this meeting, Porter surrendered Aeroframe's lease and recommended that the Board award the lease to AAR. The board voted to do so. The president of the board testified that he relied on Porter's judgment when he voted on the lease award.

Porter emailed the COO of ATS the next day and stated that he was informed "via email that AAR had secured the lease at Chennault and they are requesting I remove all aeroframe assets over the next two weeks." On August 4, Porter agreed on behalf of Aeroframe to vacate the premises by August 31. A couple days later, ATS sent a demand letter to Aeroframe advising it to cure its default on the EADS note within five days or face acceleration. Porter decided to close Aeroframe's operations on August 9. He has stated that this was due to the failure of a customer to pay its invoices, lack of funds for payroll, and "imminent foreclosure of the equipment by ATS."

Aeroframe did not cure its default, and ATS sent a letter accelerating the note. Aeroframe signed a strict foreclosure agreement on August 20.

AAR did not end up hiring Porter, and Porter sued. This lawsuit is still pending in the Western District of Tennessee.[1] Emails among AAR employees suggest that they could not hire Porter because he did not make payroll at least twice and blamed his failure on his customers.[2]

---

[1] *See Porter v. AAR Aircraft Servs., Inc.*, 2:15-cv-02780-JTF-tmp (W.D. Tenn.).

[2] Part of one email states:

Two reasons why Roger cannot go into an operating position at our new business in Lake Charles:

No. 17-30142 c/w
No. 17-30483

## II.   Procedural History

Michael Ashford, a former employee of Aeroframe, sued Aeroframe and ATS in October 2013 in state court.  Ashford claimed that under Louisiana's Last Paycheck Law, Aeroframe owed him an amount equal to his unpaid wages and vacation time.  He also sought statutory penalties equal to 90 days of wages, attorney's fees, costs, and interest under La. Rev. Stat. 23:632.  Ashford sued ATS for interference with a contract, violations of the Louisiana Unfair Trade Practices Act ("LUTPA"), and violations of La. Civ. Code Art. 2315.  ATS cross-claimed against Aeroframe and brought a third-party claim against Porter.  Porter and Aeroframe cross-claimed against ATS.  Ashford, Porter, and Aeroframe are citizens of Louisiana.  ATS is a Washington corporation.

### a.  Jurisdiction Disputes

ATS removed the case to federal court in May 2014.  During discovery in state court, ATS received a copy of an email written by Ashford's counsel that, ATS argued, showed that the parties should be realigned so that ATS would be the only defendant and there would be complete diversity.  The email sent by Ashford's counsel, Somer Brown at the Cox Law Firm, states:

> For those of you who missed the Aeroframe client meeting on Friday, please allow this to serve as an update and a request for you to execute and return the attached waiver.

---

1.      He has committed the most grievous of business leadership/ownership mistakes by missing at least two payrolls. This will totally diminish employee trust, confidence and therefore his leadership effectiveness.

2.      He blames his failure on his customers FedEx and ILFC. We can't afford to have a leader who blames his customers for his failure. In my brief conversations I did not hear him take ownership for his failure. I only want leaders who take ownership.

13

No. 17-30142 c/w
No. 17-30483

In March we traveled to Seattle and took the deposition of ATS's corporate representatives. Those individuals confirmed that, as Roger Porter had previously told us, ATS came in after knowing that AAR was doing a deal with Aeroframe. It is our belief, now confirmed by undisputed testimony from ATS and Roger Porter, that ATS was the cause of Aeroframe's closure and the loss of your employment and benefits.

Roger has filed a cross-claim against ATS for his own losses and those of Aeroframe. Aeroframe has retained counsel from Natchitoches who is working cooperatively with us and will not defend against your wage claims. In fact, your entitlement to wages, penalties, and attorney's fees will be stipulated to by Aeroframe.

Roger has approached my partner, Tom Filo, and requested that her [sic] pursue Roger's individual claim against ATS. Roger has agreed to stipulate in writing that if we represent him, his clients will be paid first out of any monies that he collects. He understands that we will not represent him absent this written agreement.

However, in order for our firm to get involved on behalf of Roger, we need each of our employee-clients to sign the attached conflict waiver. Without this signed document from each of you, we cannot assist Roger in collecting money FOR YOU.

If you have any questions, please feel free to call or email me. We need these documents back as soon as possible. If you are not willing to enter into this arrangement with us, please contact me so that I can get you in touch with other counsel, but please also be advised that Roger's written stipulation of first payments will only apply to the employees who are represented by this law firm.

In response to a motion to remand, the magistrate judge rejected ATS's argument that this email was evidence that Ashford's claim against Aeroframe was a pretense. However, the magistrate judge read the letter to show that "since inception of this litigation, these parties have voluntarily entered into an agreement which aligns all of their interests against those of ATS." *Ashford*

14

No. 17-30142 c/w
No. 17-30483

*v. Aeroframe Servs., LLC*, No. 2:14-CV-992, 2015 WL 13650549, at \*9 (W.D. La. Jan. 30, 2015).  The judge held that the letter could be considered for purposes of removal because "[c]ompromise with an adverse litigant is . . . a voluntary action that will support removal."  *Id.* (citations omitted).

The magistrate judge noted the absence of a written agreement among Ashford, Aeroframe, and Porter.  If no such agreement existed, however, the magistrate judge held there would be an irreconcilable conflict because the same law firm was representing Ashford and Porter.  *Id.* at \*10.[3]  The judge held that consent to removal by Aeroframe was not required because it had compromised with Ashford.  *Id.* at \*11.  The district court used different reasoning: it focused on the law of realignment rather than whether Ashford and Aeroframe had a binding settlement.  The court held that the "[t]he decision to look past the pleadings and realign the parties on removal was neither clearly erroneous nor contrary to law in light of the admission that Aeroframe had agreed to stipulate to Ashford's damages."  *Ashford v. Aeroframe Servs., LLC*, No. 2:14-CV-992, 2015 WL 2089994, at \*3 (W.D. La. May 4, 2015).  However, the court reversed and remanded in part for the magistrate judge to consider whether the amount in controversy was greater than $75,000.  *Id.* at \*4.

---

[3] "The arrangement obviously came to fruition as Mr. Filo [an attorney at the Cox Law Firm] did in fact enroll as counsel some three weeks following the date of the e-mail and plaintiff has admitted as much in brief. The only document missing from this scenario is the written agreement by Aeroframe stipulating Ashford's damages. We must assume that Ashford's counsel insured this step was completed, however, insofar as that was one of the underlying elements of Porter's inducement to have Ashford waive privilege." (internal citation omitted).

No. 17-30142 c/w
No. 17-30483

Ashford filed an affidavit stating that his claims fell below the jurisdictional amount. He then attempted to appeal the diversity decision to this court, but his appeal was dismissed for lack of jurisdiction. The district court issued an amended order holding that it was "facially apparent from plaintiff's pleading" that the amount in controversy exceeded the jurisdictional requirement. Ashford and Aeroframe then appealed to this court, which denied interlocutory review because the questions at issue were primarily factual.

Ashford then filed for summary judgment against Aeroframe, and Aeroframe filed a motion to dismiss against Ashford. The district court stated that these motions "appear to be nothing more than an attempt to re-litigate previously decided issues." *Ashford v. Aeroframe Servs., LLC*, No. 2:14-CV-992, 2017 WL 660578, at *1 (W.D. La. Feb. 14, 2017). The court denied both motions as moot:

> . . . Because the court previously found that the claims between Ashford and Aeroframe are resolved, the Motion for Summary Judgment is moot and will be denied.
>
> Aeroframe's Motion to Dismiss is an even more blatant attempt of the parties to re-litigate their failed motions to remand. . . . These exact arguments were addressed in the Memorandum Ruling denying their motions to remand. While the parties may not be happy with the result, they cannot continuously forum shop with thinly veiled motions to remand. The claims between Ashford and Aeroframe have been resolved.

*Id.* at *2. The court also noted that it thought ethical rules would be violated if Aeroframe and Ashford were actually adverse. *Id.* at *1 n.5.

16

No. 17-30142 c/w
No. 17-30483

Ashford and Aeroframe appealed this decision, which is appeal number 17-30142 pending before us. ATS moved to be added to that case as a party-appellee and Ashford opposed the motion. This court granted the motion.

### b. Summary Judgment

ATS moved for summary judgment. Ashford, Porter, and Aeroframe moved to continue deadlines in order to conduct more discovery before summary judgment. The court denied this motion as "simply an effort to delay and prolong these proceedings."

The parties disagreed about how the EADS note should be settled. Porter stated in a declaration that Aeroframe never agreed "to allow ATS to purchase the EADS note." *Ashford v. Aeroframe Servs., LLC*, No. 2:14-CV-00992, 2017 WL 2293109, at *3 (W.D. La. May 24, 2017). The district court found that "plaintiffs' attempt to distinguish between the settlement and purchase of the debt" was a "semantic distinction." *Id.* The court found that:

> none of the plaintiffs offer evidence of another agreed upon method of settling or eliminating the debt. The only evidence provided supports ATS's interpretation of how the debt was to be settled, by purchasing the note from EADS, especially considering that Aeroframe put ATS into direct contact with EADS, ATS rejected Aeroframe's request to borrow the money to pay EADS on the defaulted loan, and Aeroframe has failed to offer the court any other viable method of settling the debt.

*Id.* (footnote omitted).

When discussing Ashford's LUTPA claim,[4] the court decided that the May NDA, which only imposed confidentiality requirements on Aeroframe,

---

[4] The district court granted ATS's summary judgment motion for all of Ashford's claims, but Ashford only appeals on his LUTPA claim.

was the NDA in effect in July. *Id.* at \*12. Therefore, the court decided that ATS did not violate an NDA by communicating with EADS. *Id.* The court also stated that Ashford "presented no evidence that ATS was required to get Aeroframe's authorization to purchase the note." *Id.* The court also held that Ashford had failed to present evidence that "ATS bought the note to sabotage the agreement between Aeroframe and AAR." *Id.* Alternatively, the court held that Ashford's LUTPA claims should also fail because he did not provide evidence of causation: "[Ashford] offers no evidentiary support for the contention that AAR intended to employ and pay back wages for Aeroframe's employees, and this court is unwilling to make such a speculation." *Id.* at \*13.

The court used similar reasoning for Porter's LUTPA claim. The court had already held ATS did not breach an NDA by communicating with EADS. The court first noted that "a simple breach of contract claim does not rise to the level of a LUTPA claim." *Id.* at \*20. Second, Aeroframe had not provided any evidence that the parties intended to settle the debt in a different manner. Even if it had, Porter had failed to show that "ATS intended to sabotage Porter's deal by purchasing or foreclosing on the EADS note." *Id.* The evidence presented by Porter did not show "an element of fraud, deceit, or misrepresentation," as required for a successful LUTPA claim. *Id.* Finally, the court held that Porter had failed to show causation because "AAR extended an offer [of employment] after the purchase of the EADS note and . . . AAR did not employ Porter based on reasons independent from ATS's actions." *Id.* at \*21.

The court granted summary judgment to ATS on Porter's tortious interference with business relations claim. Porter had failed to raise a

18

genuine, material fact issue that he was "actually prevented . . . from dealing with a third party" because AAR continued to deal with him after ATS bought the note. *Id.* at \*19. The court also held that the evidence "shows that ATS purchased the EADS note for business reasons, not out of malice." *Id.* Alternatively, as with the LUTPA claim, Porter failed to establish a genuine fact issue regarding causation. *Id.*

Finally, the court granted summary judgment against Porter on his intentional interference with contractual relations claim. The court held that "Porter's claim could only survive by expanding Louisiana tort law" because "the Louisiana Supreme Court has only recognized this cause of action against a corporate officer, not a corporate entity." *Id.*

The court also granted summary judgment against Aeroframe, which has not appealed. Ashford and Porter appealed from the summary judgment decision, yielding case number 17-30483, which was consolidated with appeal number 17-30142.

## STANDARD OF REVIEW

This court reviews removal decisions *de novo*. *Estate of Martineau v. ARCO Chemical Co.*, 203 F.3d 904, 910 (5th Cir. 2000). This court reviews the "district court's determination of the amount in controversy *de novo*." *White v. FCI USA, Inc.*, 319 F.3d 672, 674 (5th Cir. 2003) (citation omitted).

The standard of review on summary judgment is *de novo*. *Rayborn v. Bossier Par. Sch. Bd.*, 881 F.3d 409, 414 (5th Cir. 2018) (citation omitted). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(a)). "All facts and evidence are

No. 17-30142 c/w
No. 17-30483

viewed in the light most favorable to the nonmovant." *In re Larry Doiron, Inc.*, 879 F.3d 568, 570-71 (5th Cir. 2018). This court reviews discovery orders for abuse of discretion. *Grogan v. Kumar,* 873 F.3d 273, 280 (5th Cir. 2017) (citation omitted).

## DISCUSSION

### I. Diversity Jurisdiction Exists in This Case

The general rule is that diversity of citizenship must exist at the time of filing in state court *and* at the time of removal. *Coury v. Prot*, 85 F.3d 244, 249 (5th Cir. 1996). A removing defendant bears the burden of establishing removal jurisdiction. Ashford and Porter contend that this case could not properly be removed because, even if the Somer Brown email showed realignment, the magistrate judge found that the realignment of interests occurred *after* the case was filed. Their argument ignores the plain text of the removal statute, which explicitly states that a case may be removed upon "receipt . . . of . . . [a] paper from which it may first be ascertained that the case is one which is *or has become* removable." 28 U.S.C. § 1446(b)(3) (emphasis added). The statute makes it clear that an initially non-removable case may become removable.

One way a case may become removable is through the realignment of interests. We recognized in *Zurn Industries, Inc. v. Acton Construction Co., Inc.* that realignment of parties is an exception to the general rule that diversity of citizenship is decided at the start of the suit. 847 F.2d 234, 236 (5th Cir. 1988). This ruling comports with *Peters v. Standard Oil Co. of Tex.*, which states that any realignment of parties should take place *before* jurisdiction is decided. 174 F.2d 162, 163 (5th Cir. 1949). These decisions

20

No. 17-30142 c/w
No. 17-30483

accord with Supreme Court precedent, which states that courts must "look beyond the pleadings, and arrange the parties according to their sides in the dispute." *City of Indianapolis v. Chase Nat. Bank of City of New York*, 314 U.S. 63, 69, 62 S. Ct. 15, 17 (1941) (citation omitted).[5] Although in *City of Indianapolis*, the Court realigned the parties and found diversity jurisdiction lacking, nothing in the decision suggests that the opposite result should not also be possible.[6] Indeed, the Wright & Miller treatise confirms that realignment should be determined before jurisdiction, and it states that realignment may destroy or create diversity jurisdiction. 13E Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3607 (3d ed.).[7]

---

[5] For over one hundred years, the Supreme Court has demonstrated that "when the arrangement of the parties is merely a contrivance between friends for the purpose of founding a jurisdiction which otherwise would not exist, the device cannot be allowed to succeed." *City of Dawson v. Columbia Ave. Saving Fund, Safe Deposit, Title & Tr. Co.*, 197 U.S. 178, 181, 25 S. Ct. 420, 422 (1905).

[6] *Cf. Standard Oil Co. of Tex.*, 174 F.2d at 163-64 (realigning the parties and thereby creating diversity jurisdiction); *City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1313-14 (11th Cir. 2012) ("This Court concludes that the converse of this principle—that parties cannot *avoid* diversity by their designation of the parties—is also true.") (emphasis in original); *Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co.*, 621 F.3d 554, 559-60, 568 (6th Cir. 2010) ("For the foregoing reasons, we uphold the district court's realignment of the parties to establish complete diversity.").

[7] Wright & Miller states:

Realignment of the parties usually will have the effect of leading the court to decide that subject matter jurisdiction is defeated; the rule works both ways, however, and subject matter jurisdiction will be sustained if diversity of citizenship exists when the parties are aligned properly, even though it is lacking on the face of the pleadings.

13E Wright & Miller, *Federal Practice and Procedure* § 3607 at 308.

No. 17-30142 c/w
No. 17-30483

Ashford and Aeroframe argue that according to *Vasquez v. Alto Bonito Gravel Plant Corp.,* there had to be an enforceable settlement agreement between them in order for the district court to realign Aeroframe as a plaintiff. 56 F.3d 689 (5th Cir. 1995), *abrogated on other grounds by Estate of Martineau*, 203 F.3d at 911.  In *Vasquez*, a defendant attempted to remove because the non-diverse defendant had settled with the plaintiff.  *Id.* at 690.  This court held that the enforceability of the settlement was a question of state law, found it not sufficiently binding to be enforceable, and dismissed.  *Id.* at 693-94.

*Vasquez,* however, was not a realignment case, nor does this case turn on whether Aeroframe is still a party to this suit.  Instead, it turns on whether Aeroframe's promise to pay Ashford was proof that Aeroframe and Ashford had the same "'ultimate interests' in the outcome of the action."  *Griffin v. Lee*, 621 F.3d 380, 388 (5th Cir. 2010) (citation omitted).

Likewise, this case is not controlled by *Caterpillar Inc. v. Lewis* or *Grupo Dataflux v. Atlas Global Group, L.P.*  *Caterpillar* held that a jurisdictional defect was cured when the non-diverse party was dismissed from the lawsuit before judgment was entered.  519 U.S. 61, 73, 117 S. Ct. 467, 475 (1996).  *Grupo Dataflux* explained that *Caterpillar* had not changed the long-standing principle that one of the original parties to a lawsuit cannot change its citizenship during the lawsuit to preserve or defeat diversity.  541 U.S. 567, 572-75, 124 S. Ct. 1920, 1924-26 (2004).  Neither of these cases involved realignment.  I would hold that the district court did not err when it considered events after this lawsuit was filed in state court to determine whether the parties had realigned their interests and the suit had become removable.

No. 17-30142 c/w
No. 17-30483

This circuit determines proper alignment by asking "whether the parties with the same 'ultimate interests' in the outcome of the action are on the same side." *Griffin*, 621 F.3d at 388 (citation omitted).[8]  As pointed out by the district court, the Somer Brown email states that all of Ashford's requested relief ("wages, penalties, and attorney's fees") would be stipulated to by Aeroframe.  Therefore, it was proper to realign Aeroframe as a plaintiff.

It was also proper not to require Aeroframe's consent to removal. Normally all co-defendants must consent to removal.  28 U.S.C. § 1441(a). There is an exception for "nominal" defendants.  *See Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressmen and Assistants' Local 349*, 427 F.2d 325, 326 (5th Cir. 1970).  A defendant is "nominal" if "in the absence of the (defendant), the Court can enter a final judgment consistent with equity and good conscience which would not be in any way unfair or inequitable to the plaintiff." *Id.* at 327 (citation omitted).  Aeroframe's stipulation of all requested relief to Ashford rendered it a "nominal" defendant.

Finally, Ashford and Porter challenge whether the jurisdictional amount is met in this case.  They rely on Ashford's post-removal affidavit, which stated that

---

[8] In deciding if parties share the same ultimate interests, the Fifth Circuit—along with the Third, Fourth, Sixth, and Ninth Circuits—applies the "primary purpose" test, which looks at whether the parties' interests are aligned regarding the "plaintiff's principal purpose for filing its suit."  *See Zurn*, 847 F.2d at 237 ("If the parties are not realigned on that [principal] claim, and there is no showing that the claim was a sham simply asserted for federal jurisdiction, subject matter jurisdiction exists."); *Palisades Collections LLC v. Shorts*, 552 F.3d 327, 337 (4th Cir. 2008); 15 *Moore's Federal Practice: Civil* § 102.20 (Matthew Bender 3d ed.).  "Use of this 'primary purpose' test often requires realignment."  15 *Moore's Federal Practice: Civil* § 102.20; *cf. Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*, 723 F.2d 1173, 1178 (5th Cir. 1984); *Indem. Ins. Co. of N. Am. v. First Nat. Bank at Winter Park, Fla.*, 351 F.2d 519, 523 (5th Cir. 1965); *Cleveland Hous. Renewal Project*, 621 F.3d at 559-60; *Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 160 (3d Cir. 1995); *Dolch v. United California Bank*, 702 F.2d 178, 181 (9th Cir. 1983).

the amount in controversy was less than the jurisdictional threshold.  This court has held that "if it is facially apparent from the petition that the amount in controversy exceeds $75,000 at the time of removal, post-removal affidavits . . . reducing the amount do not deprive the district court of jurisdiction." *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292, 58 S. Ct. 586, 592 (1938)).  The magistrate judge found, and the district court affirmed, that Ashford's pleading facially met the jurisdictional amount.  Ashford sued ATS for unpaid wages, lost benefits, lost future wages, and attorney's fees.  The magistrate judge held that "[a]lthough lost wages may be negligible, future lost wages, future benefits lost and attorney fees for the prosecution of this matter place the amount in controversy well above the minimum threshold." *Ashford v. Aeroframe Servs., LLC*, 2015 WL 13650549, at *11.  In sum, ATS successfully established that diversity existed between it and the realigned parties pursuant to 28 U.S.C. § 1446(b)(3).

## II. The 17-30142 Appeal and Sanctions Request

As detailed above, Aeroframe and Ashford filed dispositive motions against each other shortly after their second failed attempt at an interlocutory appeal.  The district court found that these motions were "nothing more than an attempt to re-litigate previously decided issues" and denied both motions as moot. *Ashford,* 2017 WL 660578, at *1-2.  Given that the briefs in this appeal were almost completely dedicated to the jurisdiction issue, it seems clear that these motions were filed merely to re-litigate jurisdiction.  Having concurred with the district court's findings and conclusion of diversity jurisdiction, I would affirm the court's denial of Aeroframe's motion to dismiss and the court's

dismissal as moot of Ashford's motion for summary judgment against Aeroframe.

ATS, as intervenor on appeal, has moved for sanctions under 28 U.S.C. § 1927 and Federal Rule of Appellate Procedure 38.

ATS argues that it is entitled to sanctions because Aeroframe and Ashford perpetrated a fraud on the court by (1) manufacturing "an elaborate false conflict between Ashford and Aeroframe to defeat removal" and (2) attempting "to posture these appeals in such a way that ATS did not have the right to participate such that this Court would not be presented with a clear picture of the facts and circumstances of these appeals." ATS asserts that the 17-30142 appeal violates Rule 3.1 of the Rules of Professional Conduct. ATS argues that the appeals should be dismissed with prejudice and ATS should be awarded costs and fees. To the date of its brief, ATS's total legal expenses have well exceeded $600,000.

Ashford responds that ATS has already moved for sanctions against Porter in district court. The court stayed the underlying case until the two appeals are resolved. Ashford argues that ATS is trying to avoid the district court's stay order and deny due process to Ashford by bypassing a discovery hearing on these issues. Ashford denies that ATS has proven collusion. Ashford contends that ATS is the reason that Porter is in this case, and "[h]ow ATS's actions in bringing a party into this lawsuit amounted to fraud by Mr. Ashford's counsel is unfathomable."

These cases have more than a whiff of professional impropriety and shenanigans. From this court's vantage point, it is difficult to separate real litigation abuse from "mere" hardball litigation tactics. Sanctions must also,

lamentably, take into consideration the majority's insistence on dismissing this case. Because Rule 11 does not seem to preclude the imposition of post-dismissal sanctions, I believe the district court should consider this possibility, on whom sanctions should be imposed, and what amount is appropriate.

### III.     The 17-30483 Appeal

#### a. The District Court Did Not Abuse Its Discretion when It Denied Ashford's Request for Additional Discovery Before Summary Judgment

Ashford argues that the district court abused its discretion when it denied his motion for further discovery before granting summary judgment. He also argues that he was at a disadvantage because many of ATS's facts came from a litigation involving AAR in Tennessee to which Ashford is not a party. Ashford did not, however, comply with Fed. Rule Civ. Pro. 56(d) by submitting an affidavit "that it cannot present facts essential to justify its position." ATS responds that the documents from the Tennessee litigation were Porter's pleadings and affidavit, and Ashford is represented by the same law firm as Porter. ATS also points out that Ashford was able to conduct depositions of ATS's CFO and COO, who were involved in the Aeroframe negotiations. Given Ashford's vexatious behavior, the district court did not abuse its discretion when it found that this motion was "simply an effort to delay and prolong these proceedings" and denied the motion.

#### b. The Summary Judgment Ruling

As detailed above, the district court granted summary judgment to ATS on the LUTPA claims after holding that Porter and Ashford had failed to present evidence of causation. Ashford argues that "[w]hether Aeroframe could have made payroll and/or whether AAR would have already taken over

operations but for the ATS Note purchase and foreclosure are issues that should not be decided summarily and as a matter of law." However, he cites no proof that AAR had intended to hire Aeroframe's employees. Porter fails to address the causation issue and has therefore waived it. *N.W. Enterprises Inc. v. City of Houston*, 352 F.3d 162, 183 n.24 (5th Cir. 2003). Ashford provides some arguments regarding causation in his reply brief. Because these are brought up for the first time in the reply brief, they are waived. *DePree v. Saunders*, 588 F.3d 282, 290 (5th Cir. 2009). Even if they were not waived, they suffer from the same defect the original brief did because they fail to point the court to evidence that supports Ashford's causation theory. Summary judgment against Porter and Ashford on their LUTPA claims should be affirmed.[9]

## CONCLUSION

For the foregoing reasons, I would uphold diversity jurisdiction in this case. I would dismiss the 17-30142 appeal. I would affirm the district court's denial of Ashford's motion for further discovery and grant of summary judgment to ATS on all claims. I urge the district court to consider Rule 11 sanctions as authorized. Given the majority's differing conclusion on these points, I respectfully dissent.

---

[9] Porter does not explicitly state which claims he is appealing. He has failed to address the district court's reasoning regarding his two other claims, so they are also waived. *N.W. Enterprises Inc.*, 352 F.3d at 183 n.24.