**H. L. PETERSON COMPANY, Appellant,**

**v.**

**S. W. APPLEWHITE, II, et ux., et al.,**
**Appellees.**

**S. W. APPLEWHITE, II, et ux., et al.,**
**Appellants,**

**v.**

**A. O. SMITH CORPORATION and H. L.**
**Peterson Company, Appellees.**

**No. 23907.**

United States Court of Appeals
Fifth Circuit.

Sept. 1, 1967.

Rehearing Denied Nov. 3, 1967.

Royal H. Brin, Jr., Cedric G. Hamlin, Dallas, Tex., for appellant.

Walter E. Workman, for S. W. Applewhite, II, and others, appellees and protective counter-appellants. Baker, Botts, Shepherd & Coates, Houston, Tex., of counsel.

James Greenwood, III, of Vinson, Elkins, Weems & Searls, Houston, Tex., for A. O. Smith Corporation, appellees.

Before BELL, GODBOLD, and DYER, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge:

The background of this appeal is a suit which arose out of the sale by Peterson, a dealer, of a new type silo and related equipment manufactured by A. O. Smith

Corporation to the Applewhites, father and son, who were dairy operators. Smith sued the Applewhites on a note representing the balance due on the purchase price. The note was secured by a chattel mortgage on the silo and related equipment. The Applewhites, in turn, asserted a claim against Smith and Peterson based on alleged false representations on their part in procuring the sale and purchase. Judgment was rendered in favor of Smith against the Applewhites for the balance due on the note and for foreclosure of the mortgage; and for the Applewhites against Peterson in the same amount for legal fraud. The case was tried to the District Court without a jury and the decision of the court, including its findings and conclusions, is reported as A. O. Smith Corporation v. Applewhite, S.D.Tex., 1965, 255 F.Supp. 785. We affirm.

The facts are set out fully in the opinion of the District Court to which reference is made. For some time prior to 1959 the A. O. Smith Corporation, a Wisconsin corporation, engaged in the manufacture of a new type of silo which is called a "Harvestore" and which was sold as a part of a program called "Vertical Farming". The basic idea behind the new system was that a complete feeding program would be accomplished by use of the Harvestore and its air tight storage through preserving the nutrient value in the ensiled feed. Much waste in the traditional method of raising livestock could be thus avoided. There would be savings in time, labor, feed, fencing and farm equipment. The program as advertised would enable the farmer to support twice the herd on the same acreage, and supposedly the Harvestore would pay for itself through increased profits. It was advertised as the "Glass-Lined Gold Mine."

Appellant H. L. Peterson Company, a Texas partnership, had engaged in selling A. O. Smith products since 1956. The District Court, however, found that it was not authorized to bind Smith and was not Smith's agent; hence the representations made by Peterson to the Applewhites which we have for consideration are not binding on Smith and no issue is presented on this score.

In December 1959, Hugh Peterson of the Peterson Company sold the Applewhites the Harvestore silo in question along with other accessory equipment. As part of the sale, Peterson made numerous representations to the Applewhites which were purportedly based on his experience in the silo field. In consummation of the sale and purchase, the Applewhites executed a sales contract, made a down payment, signed a promissory note payable to Peterson for the balance due on the purchase price and executed a chattel mortgage covering the silo and equipment. The note was then endorsed and the chattel mortgage assigned to the A. O. Smith Corporation.[1]

The Applewhites almost doubled the size of their dairy herd in reliance on the representations of Peterson as to the effectiveness of the Harvestore. It proved to be ineffective and within a year almost half of their dairy herd went dry. The Applewhites were by this time disillusioned with their purchase, defaulted on the note, and offered to return the Harvestore and related equipment to Peterson. Tender was refused. On May 31, 1961 timely suit was filed by the Applewhites in state court based on allegations of fraud in the inducement of the transaction, and breach of warranties. They sought cancellation and rescission of the note and chattel mortgage, and, in the alternative, damages suffered through the use of the silo and equipment. Both Peterson and Smith answered in the state court; neither objected to jurisdiction nor did they file counterclaims.

Much later, in fact in August of 1962, Smith filed suit against the Applewhites in the federal district court, alleging diversity jurisdiction, setting up the the

---

1. The District Court found that Smith was a holder in due course and no ques-tion in this respect is presented on this appeal.

note and mortgage and seeking judgment for the balance due on the note. The Applewhites responded by filing a plea in abatement and motion to stay on the basis that suit was pending in the state court. They urged that the claim brought by Smith in federal court constituted a compulsory counterclaim under Texas law, and also that they were being put to a duplication of expense. The plea and motion were overruled; the Applewhites then filed a counterclaim against Smith and Peterson, designating themselves as counter-plaintiffs and Smith and Peterson as counter-defendants. Peterson's motion to dismiss based on lack of diversity was overruled.

Peterson contends that the district court erred in holding: (1) that it was subject to the jurisdiction of the federal court; (2) that the statute of limitations did not bar the counterclaim based on fraud and (3) that it committed legal fraud. Peterson also urges that an incorrect measure of damages was applied.[2]

 With respect to the question of jurisdiction, the Applewhites and Peterson are residents of Texas and Peterson contends that the court lacks jurisdiction over it because of the absence of diversity of citizenship. Peterson styles itself on appeal as a third party defendant under Rule 14, F.R.Civ.P., and not as an additional party under Rule 13, F.R.Civ.P., governing counterclaims. The claim is that a third party action under Rule 14 is permissive in nature and therefore, as under the permissive counterclaim rule, an additional party may not be brought in under the ancillary jurisdiction of the court. The court had jurisdiction over Peterson whether it be styled a third party defendant or an additional party under the counterclaim rule. This is for the reason that under Rule 14, the court has ancillary jurisdiction over a third party defendant even absent diversity of citizenship. Southern Milling Company v. United States, 5 Cir., 1959, 270 F.2d 80; Agrashell, Inc. v. Bernard Sirotta Company, 2 Cir., 1965, 344 F.2d 583; Barron & Holtzoff (Wright Ed., 1960) § 424, pp. 650–651; 3 Moore, Federal Practice, par. 14.26, p. 707; and Fraser, Ancillary Jurisdiction and the Joinder of Claims in the Federal Courts, 33 F.R.D. 27, 38–39 (1964).

 The district court treated Peterson as an additional party under the counterclaim rule. This followed the premise of the Applewhites' counterclaim and, as such, the court also had jurisdiction. This is because the counterclaim was compulsory.[3] See Rule 13(a), supra. The counterclaim arises directly out of the sales contract and note and meets even the strict definition of a compulsory counterclaim such as where the Supreme Court said "So close is the connection between the case sought to be stated in the bill and that set up in the counterclaim, that it only needs the failure of the former to establish a foundation for the latter * * *". Moore v. New York Cotton Exchange, 1926, 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750.[4] It is settled that where as here the counterclaim is compulsory against Smith, no independent jurisdictional ground need exist where an additional party such as Peterson is brought into the case by the counterclaimant. See Dery v. Wyer, 2

---

2. The Applewhites took a cross-appeal conditioned on and to be considered only if the judgment of the district court is reversed. Since we affirm we do not reach this cross-appeal which attacks the judgment favoring Smith.

3. Jurisdiction was not precluded because the counterclaim was the subject of a pending suit in the state court. This provision of Rule 13(a) merely provides an option for the counterclaimant which the Applewhites did not exercise in this case. See Union Paving Company v. 

Downer Corporation, 9 Cir., 1960, 276 F.2d 468.

4. A compulsory counterclaim under Rule 13(a) is one which arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim. This has been broadly interpreted not to require an absolute identity of factual backgrounds for the two claims but only a logical relationship between them. United Artists Corporation v. Masterpiece Productions, Inc., infra at p. 216 of 221 F.2d, and cases there cited.

Cir., 1959, 265 F.2d 804; United Artists Corporation v. Masterpiece Productions, 2 Cir., 1955, 221 F.2d 213; Lesnik v. Public Industrials Corporation, 2 Cir., 1944, 144 F.2d 968; Barron & Holtzoff (Wright Ed., 1960) § 392, pp. 556–557. Our own case of Reynolds v. Maples, 5 Cir., 1954, 214 F.2d 395 is not to the contrary for the counterclaim there was permissive rather than compulsory. See Comment, Barron & Holtzoff (Wright Ed., 1960) § 392, p. 556, Footnote 41.

Peterson's argument that the counterclaim is barred by the Texas two year statute of limitations, Art. 5526, Tex. Rev.Civ.Stat., presents a novel, close and narrow question. The district court ruled to the contrary on two grounds. First, the court was of the opinion that the cause of action was saved by Art. 5539a, Tex.Rev.Civ.Stat., which applies only to causes of action which have been dismissed for lack of jurisdiction and which are refiled in a court of proper jurisdiction within sixty days. See Scurlock Oil Company v. Three States Contracting Company, 5 Cir., 1959, 272 F.2d 169, and the Texas cases cited therein. Here the Applewhites' claim was not filed in a state court lacking jurisdiction nor had it been dismissed and thus this statute is not applicable to the instant situation.

The second ground for rejecting Peterson's argument was that the filing in the state court tolled the statute of limitations for the purposes of bringing the counterclaim in another court. The court cited no direct authority for this proposition and there apparently is none one way or the other where the counterclaimant is the plaintiff in the earlier filed action. Peterson relies on authorities to the contrary where the plaintiff in the first filed action refiles his suit in another court after the period of limitation has expired. Griffith v. Associated Employers' Reciprocal, Tex.Civ.App., 1928, 10 S.W. 2d 129; Welner v. Stearns, 1911, 40 Utah 185, 120 P. 490; Falsetti v. Local Union No. 2026, United Mine Workers, 3 Cir., 1966, 355 F.2d 658. This, however, is not the point. Here we deal with a counterclaim.

Under the circumstances we are called upon to decide what the Texas Supreme Court would decide on this question, and like the district court, we take some guidance from the rationale used in the case of Burnett v. New York Central Railroad, 1965, 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941. That case also involved a question of whether a statute of limitations had been tolled. While not in point on its facts, it is helpful from the standpoint of approach. The court reached its decision by a consideration of the two policies involved: The humanitarian purpose of the Federal Employers' Liability Act, and the purpose of the statute of limitations to protect a defendant from stale claims. The court noted that the policy of repose, designed to protect defendants, could be weighed against other factors indicating that the interest of justice required vindication of the plaintiff's rights. The conclusion was that the federal statute of limitations was tolled during the pendency of an earlier state court suit which had been dismissed on venue grounds.

Here we can look to the state policy. The Texas compulsory counterclaim rule, Rule 97(a), T.R.C.P. like Rule 13, F.R. Civ.P., is designed to avoid a multiplicity of litigation by requiring that compulsory counterclaims be litigated in the suit brought on the main claim. We have held that the counterclaim here was compulsory. Thus the clear policy would indicate that the counterclaim should be litigated in the federal court or that the note should have been the subject matter of a counterclaim in the state litigation. Once the federal litigation was instituted and the Applewhites were unsuccessful in their effort to maintain the entire litigation in the state court, the policy would have required that the entire litigation be settled in the federal court unless some countervailing policy to the contrary appears. The only countervailing policy is the statute of limitations itself, Art. 5526, supra, and the policy underlying it

is to assure fairness to Smith and Peterson by protecting them from a stale claim.

■ Here the claim of the Applewhites was anything but stale. They did not sleep on their claim but sued in the state court within approximately six months after their claim accrued and on the same cause of action which became the federal counterclaim. They attempted to abate the federal suit and also to stay it, taking the position that the federal suit on the note should have been filed as a counterclaim in the state court. After the federal court overruled their plea and motion, they could have defended as best they could and thereafter litigated their own claim in the state court. Such a course would have been in the face of the policy against multiplicity of suits and duplication of efforts. The Texas statute, Art. 5526, supra, requires the commencement of a suit on a cause of action such as is involved in the counterclaim within two years after the claim accrues. We think that this requirement was fully met and that this statute would not bar a state court plaintiff from asserting the same cause of action by way of a counterclaim when he is involuntarily in the federal forum and makes every possible effort to litigate the question in the state court. This is clearly true as to the federal plaintiff, Smith. Should Peterson be treated differently? The same policy of avoiding multiplicity of suits and a duplication of efforts applies. Peterson is inextricably related to and is the prime mover in the base transaction. The state court suit against Peterson satisfied the purposes of the Texas statute of limitations insofar as it was to afford protection from a stale claim.

The dual system of courts should not be used as a procedural device or trap to fragment litigation. Both forums were adequate here to prevent fragmentation and we do not think the Texas Supreme Court would require the result urged by the Peterson Company. This seems clear when these policy considerations are applied to the particular facts of this case.

The period of limitation commenced to run when the fraud against Peterson was discovered. This was no earlier than when the vertical farming program was tried unsuccessfully for the third and last time in December 1960. The federal suit was filed in August 1962, well within the two year period. The Applewhites, still within the period, filed the plea in abatement and the motion to stay based on the fact of the state suit. This was a limited assertion in the federal forum of the cause of action which later became the counterclaim. It is true that the counterclaim was not filed within the two year period but the cause of action which it encompassed had been filed in the state court and then asserted in the federal court as a reason for continuing the litigation in the state court, all within the two year period. This was sufficient, it seems to us, to toll the statute of limitations as to the counterclaim and the district court did not err in holding that the counterclaim was not barred by the two year statute of limitations.

The decision of the district court is entirely adequate on the question of legal fraud. The court found that Hugh Peterson made nine false and material representations on behalf of the Peterson Company to the Applewhites in connection with the sale. The court found that these representations were made after Mr. Peterson inspected the Applewhite dairy farm and prior to the sale in order to induce the sale, and that the Applewhites believed and relied upon the representations and would not have made the purchase had such representations not been made to them.

■ The court concluded that Peterson's conduct did not constitute actual fraud but that it nonetheless amounted to legal fraud under Texas law. Legal fraud under the Texas authorities consists of a breach of a legal or equitable duty, which, irrespective of intent, the law finds fraudulent because of its tendency to deceive others. See Archer v. Griffith, S.Ct.Tex., 1965, 390 S.W.2d 735. But Peterson argues that the rep-

resentations made were as to future events and thus were not actionable absent fraudulent intent, citing such cases as Chicago T. & M. C. Ry. v. Titterington, 1892, 84 Tex. 218, 19 S.W. 472. Although some of the representations by Mr. Peterson did relate to future income and profits, much of what he said was presented as coming from his own peculiar knowledge concerning Harvestore silos. His remarks concerned the present effectiveness of the vertical farming plan. For example, his representation that the use of the Harvestore would preserve the nutrients in the stored feed crop turned out to be false. This was the root of the worth or value of the Harvestore silo system and was a representation as to the present sufficiency and capacity of the silo. Such a representation is to be distinguished from a mere opinion as to what might happen in the future.

■ The court found on conflicting evidence that the sales effort of Peterson went beyond ordinary dealer's talk and puffing. There is an adequate evidentiary basis for the findings of the court and its factual conclusions on the subject of the representations. They are not clearly erroneous. There being no departure from the Texas standard of legal fraud, we hold that the district court did not commit error with respect to its holding that Peterson committed legal fraud on the Applewhites in the sales transaction in question.

■ The last error assigned relates to the measure of damages. Under no theory was Peterson injured by the measure of damages invoked by the court. The judgment is in the minimum amount that could have been awarded on the findings. The Applewhites were entitled to the actual amount of their loss resulting directly or proximately from the legal fraud practiced on them. Morriss-Buick v. Pondrom, Tex.Com. App., 1938, 131 Tex. 98, 113 S.W.2d 889. They were awarded only such amount as would constitute the ultimate balance due on the note. Peterson cannot complain.

28 U.S.C.A. § 2111. Cf. W. H. Goff Co. v. Lamborn & Co., 5 Cir., 1922, 281 F. 613.

We affirm on the main appeal and dismiss the conditional cross-appeal.