# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 19, 2024

Lyle W. Cayce
Clerk

No. 22-30288

CONSOLIDATED WITH

Nos. 22-30185, 22-30186, 22-30187, 22-30188, 22-30189, 22-30190, 22-30191, 22-30192, 22-30193, 22-30194, 22-30196, 22-30198, 22-30201, 22-30209, 22-30207, 22-30212

_____

MICHAEL ASHFORD,

*Plaintiff—Appellant—Appellee*,

*versus*

AEROFRAME SERVICES, L.L.C.,

*Defendant—Appellant*,

*versus*

AVIATION TECHNICAL SERVICES, INCORPORATED,

*Defendant—Third Party Plaintiff—Appellee*,

*versus*

ROGER ALLEN PORTER, II,

*Third Party Defendant—Appellant*.

_____

Appeals from the United States District Court
for the Western District of Louisiana

USDC Nos. 2:19-CV-610,
2:14-CV-984, 2:14-CV-986, 2:14-CV- 985, 2:14-CV-987,
2:14-CV-2323, 2:16-CV-1512, 2:14-CV-990, 2:14-CV-989,
2:14-CV-2538, 2:14-CV-983, 2:14-CV-988, 2:14-CV-2324,
2:14-CV-2325, 2:16- CV-1397, 2:14-CV-991, 2:16-CV-1378

---

Before BARKSDALE, SOUTHWICK, and HIGGINSON, *Circuit Judges*.

LESLIE H. SOUTHWICK, *Circuit Judge*:

This appeal follows more than a decade of litigation, including one earlier appeal to this court. *Ashford v. Aeroframe Servs., L.L.C.*, 907 F.3d 385 (5th Cir. 2018). In that 2018 decision, we held we did not have jurisdiction to hear the merits because some parties were not diverse when the suit was filed in state court. *Id.* at 387. Since then, new evidence reveals that diversity has existed since the inception of the litigation. We AFFIRM the district court's dismissal of all claims against the defendant.

## FACTUAL AND PROCEDURAL BACKGROUND

In August 2013, Michael Ashford was terminated by his employer, Aeroframe. Aeroframe is a Limited Liability Company whose sole principal was Roger Allen Porter. The company was a maintenance, repair, and overhaul ("MRO") facility based at the Chennault International Airport located in Lake Charles, Louisiana.

Following his termination, Ashford, a Louisiana resident, sued to recover unpaid wages. Ashford's attorney is Somer Brown with the law firm of Cox, Cox, Filo, Camel & Wilson in Lake Charles. Brown filed ten separate lawsuits on behalf of several former Aeroframe employees, including Ashford, in four different Louisiana parishes. The allegations in each complaint were the same. The first suit filed was *Cooley v. Aeroframe*, on September 24, 2013, in Calcasieu Parish. Ashford's suit — the lead case in this appeal — was filed in Evangeline Parish, on October 8, 2013.

2

No. 22-30288
c/w Nos. 22-30185, 22-30186, 22-30187, 22-30188, 22-30189, 22-30190, 22-30191, 22-30192, 22-30193, 22-30194, 22-30196, 22-30198, 22-30201, 22-30207, 22-30209, 22-30212

Ashford's state court petition sought recovery from two defendants. First, he sued his former employer, Aeroframe, under the Louisiana Last Paycheck Law. La. R.S. 23:631. Roger Porter, the sole principal of Aeroframe, was a Louisiana citizen, making Aeroframe a Louisiana citizen.[1]

Ashford also sued Aviation Technical Services, Incorporated ("ATS"), a Washington corporation. Prior to Ashford's termination, Porter had been negotiating an agreement with ATS that might have alleviated Aeroframe's financial difficulties. Ashford's petition alleged that Aeroframe and ATS negotiated for a partnership, merger, or buy-out, but did not reach an agreement. Thereafter, Aeroframe allegedly began negotiating with an ATS competitor, AAR Corporation.

The petition alleged that negotiations with AAR would have resulted in a "smooth continuation of the MRO business in Lake Charles" but for the that fact ATS purchased an outstanding loan on Aeroframe's assets, Aeroframe defaulted, and ATS foreclosed on the loan. Ashford's petition asserted that ATS "attempted to [seize] Aeroframe's assets to cause Aeroframe to go out of business." Ashford contended that ATS misused confidential information about Aeroframe, abandoned its plan to acquire Aeroframe, and caused Aeroframe's inability to pay its former employees (including himself). Ashford alleged violations of Louisiana Civil Code article 2315, tortious interference with contractual relations, and the Louisiana Unfair Trade Practices Act.

---

[1] ATS also submitted a "Motion to Amend Jurisdictional Facts and Request for Judicial Notice." In that motion, ATS argues that Porter was in fact a citizen of Tennessee, not Louisiana, rendering the parties diverse. Because we hold that the parties were aligned from the inception of the litigation and dismiss the counts against ATS, we DENY the motion.

No. 22-30288
c/w Nos. 22-30185, 22-30186, 22-30187, 22-30188, 22-30189, 22-30190, 22-30191, 22-30192, 22-30193, 22-30194, 22-30196, 22-30198, 22-30201, 22-30207, 22-30209, 22-30212

On March 10, 2014, ATS cross-claimed against Aeroframe and filed a third-party demand against Aeroframe's sole principal, Porter. In its claims against Aeroframe and Porter, ATS alleged it suffered financial loss from its failed attempt to acquire Aeroframe.

On April 7, 2014, Porter cross-claimed against ATS, asserting tortious interference and unfair trade practices. Porter's pleading was supposedly filed *pro se*. It was later revealed that attorney Thomas Filo drafted the demand for Porter. Both Filo and Ashford's counsel, Brown, worked at the Cox law firm. On May 9, 2014, Filo was granted leave by the state court to appear officially as counsel for Porter. At that time, Aeroframe was represented by the Williams Family Law Firm. Thus, the representation roster consisted of the Cox law firm acting for both plaintiff Ashford and third-party defendant Porter, while defendants Aeroframe and ATS had individual counsel. We will discuss later the evidence regarding whether the Williams law firm was acting independently from the Cox law firm.

On May 14, 2014, ATS filed its first notice of removal to federal court based on diversity of citizenship. ATS alleged there had been "improper and/or fraudulent joinder" of Aeroframe, thus allowing removal. In the alternative, ATS argued the parties should be realigned "in accordance with their interests." ATS argued the employees' claims against Aeroframe were a pretense because Aeroframe was out of business and insolvent as of the filing date. ATS further contended that employees' counsel Brown was colluding with Porter to shield him from liability by not naming him in the suit. ATS argued Aeroframe was only added to the suit to defeat diversity jurisdiction and to remain in a friendly state-court forum to target ATS as a deep-pocket corporation.

4

No. 22-30288
c/w Nos. 22-30185, 22-30186, 22-30187, 22-30188, 22-30189, 22-30190, 22-30191, 22-30192, 22-30193, 22-30194, 22-30196, 22-30198, 22-30201, 22-30207, 22-30209, 22-30212

ATS's notice of removal relied on the statutory provision allowing removal to federal court within thirty days of "receipt by the defendant . . . of a copy of an amended pleading, motion, order or *other paper* from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3) (emphasis added). ATS argued this "other paper" was a copy of an email it obtained on April 17, 2014. Brown sent the email on April 15, 2014, to her clients, including Ashford.

According to ATS, the email revealed that Brown had been colluding with Aeroframe and Porter — her clients' supposed adversaries in the suits — from the inception of the lawsuits. ATS argued the email revealed the plaintiffs-employees did not "intend to pursue Aeroframe as a defendant in this matter but are rather working closely with Aeroframe and Roger A. Porter in their efforts to oppose ATS in this litigation."

The email read:

For those of you who missed the Aeroframe client meeting on Friday, please allow this to serve as an update and a request for you to execute and return the attached waiver.

In March we traveled to Seattle and took the deposition of ATS's corporate representatives. Those individuals confirmed that, as Roger Porter had previously told us, ATS came in after knowing that AAR was doing a deal with Aeroframe. It is our belief, now confirmed by undisputed testimony from ATS and Roger Porter, that ATS was the cause of Aeroframe's closure and the loss of your employment and benefits.

[Porter] has filed a cross-claim against ATS for his own losses and those of Aeroframe. Aeroframe has retained counsel from Natchitoches [the Williams law firm] who is working cooperatively with us and will not defend against your wage

5

claims. In fact, your entitlement to wages, penalties, and attorney's fees will be stipulated to by Aeroframe.

[Porter] has approached my partner, Tom Filo, and requested that he[] pursue [Porter]'s individual claim against ATS. [Porter] has agreed to stipulate in writing that if we represent him, his clients will be paid first out of any monies that he collects. He understands that we will not represent him absent this written agreement.

However, in order for our firm to get involved on behalf of [Porter], we need each of our employee-clients to sign the attached conflict waiver. Without this signed document from each of you, we cannot assist [Porter] in collecting money FOR YOU.

If you have any questions, please feel free to call or email me. We need these documents back as soon as possible. If you are not willing to enter into this arrangement with us, please contact me so that I can get you in touch with other counsel, but please also be advised that [Porter]'s written stipulation of first payments will only apply to the employees who are represented by this law firm.

The ATS notice of removal stated that the district court should realign the parties according to their interests such that Aeroframe would be considered a plaintiff, along with the Plaintiffs-Employees and Porter, in a suit against ATS.[2]

---

[2] All suits filed by Brown were removed to federal court on May 14, 2014. Seventeen of those suits are consolidated here. ATS argues removal to federal court was proper in 14 of the 17 appeals. ATS agrees that this court lacks jurisdiction in three of the cases. The first is *Day v. Aeroframe* (No. 22-30190), because Plaintiff-Employee Day's claims against Aeroframe remain pending. Day's counsel did not file a motion for summary judgment against Aeroframe and the judgment in *Day* was not certified as final. The others are *Barreda v. Aeroframe* (No. 22-30193) and *Cooley v. Aeroframe* (No. 22-30188). In those, unlike in the other cases, ATS's claims against Porter and Aeroframe have not been

Ashford, Aeroframe, and Porter moved to remand to state court.  The magistrate judge recommended denying the motions to remand, and the district court affirmed.  Although the magistrate judge recommended finding that the email was not sufficient evidence to show "the parties were aligned from the inception of the litigation," she agreed with ATS's alternative argument that the email demonstrated "complete diversity of citizenship *now* exists" because the parties had voluntarily entered into an agreement that aligned all of their interests against ATS.  The court mentioned that Aeroframe had "stipulated to Ashford's claim[;] Porter is claiming the same loss as Aeroframe against ATS[;] there exists no claim between Porter and Aeroframe[;] and Porter agrees to pay Ashford's claim first from the proceeds of his recovery."  The magistrate judge found that those facts meant there had been a compromise between adverse litigants supporting removal.  The district court affirmed the magistrate judge's recommendation that there was federal subject matter jurisdiction after realigning the parties according to their interests.  All claims against ATS by the non-ATS litigants were later dismissed by the district court on summary judgment.

The non-ATS parties appealed.  A prior panel of this court determined that, even if Ashford's and Aeroframe's interests were aligned by the time Brown sent the email to her employee-clients, their interests were adverse at the time suit was *filed*, and "federal diversity-of-citizenship jurisdiction 'depends upon the state of things at the time of the action brought.'"  *Ashford*, 907 F.3d at 386 (quoting *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570–71 (2004)).  Because the magistrate judge "found that Ashford and Aeroframe were (at least initially) adverse," the

_____

dismissed. No party disputes ATS's assertion regarding these three suits, and we therefore DISMISS them from this appeal.

7

panel concluded that "it cannot be said that diversity of citizenship existed at the time of filing in state court." *Id.* at 388 (quotation marks and citation omitted). The panel vacated and remanded. *Id.*

Judge Davis concurred in the judgment only. He explained that this court's precedent "provides that a case can become removable under federal diversity jurisdiction if the plaintiff and the nondiverse defendant enter into an irrevocable settlement." *Id.* (Davis, J., concurring in the judgment). He agreed that the email from Ashford's counsel to Aeroframe *alone* was insufficient to realign Aeroframe as a plaintiff in the matter. *Id.* at 388–89. Judge Davis, though, would have held that there was sufficient evidence of a settlement if there were a writing from Aeroframe "confirming a promise to pay and/or to stipulate to Ashford's requested relief," but that "no such agreement was ever produced in this case." *Id.* at 388–89.

Judge Jones dissented. She would have found jurisdiction because she argued a case may become removable if there is a "realignment of interests" that occurs even after inception of the litigation. *Id.* at 395 (Jones, J., dissenting) (citing 28 U.S.C. § 1446(b)(3)). Judge Jones would have held that Aeroframe's promise to pay Ashford demonstrated they had the same "ultimate interests in the outcome of the action" such that it was proper to consider "events after this lawsuit was filed in state court to determine whether the parties had realigned their interests and the suit had become removable." *Id.* at 396 (quoting *Griffin v. Lee*, 621 F.3d 380, 388 (5th Cir. 2010)).

The prior panel remanded to district court. *Id.* at 388. Before that court carried out our order to remand to state court, ATS filed a motion for sanctions. In its motion, ATS explained how it recently learned that in December 2018, while the appeal was pending in this court, Porter testified

No. 22-30288
c/w Nos. 22-30185, 22-30186, 22-30187, 22-30188, 22-30189, 22-30190, 22-30191, 22-30192, 22-30193, 22-30194, 22-30196, 22-30198, 22-30201, 22-30207, 22-30209, 22-30212

in a separate lawsuit against AAR.[3]  In that testimony, Porter revealed he did not "oppose the employees['] claim[s] for unpaid wages" and admitted that, as principal of Aeroframe, he signed an agreement with the Plaintiffs-Employees wherein he would "subordinate[] anything that I would get to the employees first."  As evidence of the agreement, Porter offered a June 4, 2014, retainer agreement with the Cox law firm ("Cox-Porter retention agreement"), which contained a "waiver of conflict."  The waiver read:

> WAIVER OF CONFLICT: [Porter] understands that [the Cox firm] is currently representing a number of former employees of Aeroframe to collect unpaid wages.  Client expressly waives any conflict regarding the law firm's representation of those former employees and, in addition, agrees that the claims of all former employees of Aeroframe represented by [the Cox law firm] shall take priority over the individual claim of . . . Porter and/or [Aeroframe] against ATS. . . . Porter expressly agrees to fund those unpaid wage claims from proceeds received by Aeroframe or . . . Porter in the event either Aeroframe or . . . Porter receives a recovery before such former employees receives recovery.

---

[3] As a reminder, AAR was a separate competitor that allegedly was planning to buy Aeroframe.  The negotiations with AAR would have resulted, according to Ashford's petition, in a "smooth continuation of the MRO business in Lake Charles," but for the fact that ATS already purchased an outstanding loan on Aeroframe's assets and Aeroframe had already defaulted on that loan.  Porter separately sued AAR in Tennessee, alleging that AAR violated a contract it had with Porter wherein it offered Porter employment and monetary benefits. *See Porter v. AAR Aircraft Servs., Inc.*, 790 F. App'x 708, 710 (6th Cir. 2019).  A jury awarded Porter $250,000, which was one year of employment under the relevant contract.  This award was affirmed. *Id.* at 715.  ATS argued in its motion for sanctions that if ATS interfered with Porter's contract with AAR, Porter would not have been able to sue AAR for breach of that same contract.

9

ATS argued this supported the need for sanctions because the non-ATS parties repeatedly denied the existence of any writing regarding a "stipulation" or "settlement" between the non-ATS parties.

The magistrate judge recommended the district court consider the new evidence and retain the case. The district court declined to adopt the recommendation and remanded the case to state court "in accordance with the judgment of the Fifth Circuit, except for the pending sanctions issues." *Ashford v. Aeroframe Servs., L.L.C.*, No. 2:14-CV-0992, 2019 WL 1716198, at *1 (W.D. La. Apr. 17, 2019).[4]

After remand, ATS again removed to federal court. By the time this second notice of removal was filed, ATS had engaged in discovery relating to the motion for sanctions. In addition to the June 4, 2014, Cox-Porter retention agreement we quoted, ATS argued new evidence attached to the second notice of removal (discussed in detail later) revealed Porter had been working with the Cox law firm from the inception of the litigation to protect himself from suit.

ATS argues this new evidence was the requisite "other paper" under 28 U.S.C. § 1446(b)(3) permitting the suit to be removable. According to ATS, the original email from Brown, combined with the Cox-Porter retention agreement, demonstrates there was a functional compromise between Ashford and Aeroframe (through Porter, the sole principal of the company), such that the parties were no longer adverse to one another. ATS contends there is now conclusive proof that Aeroframe was a merely nominal

---

[4] The district court stated "[t]he Fifth Circuit has recognized [that] 'a district court must possess the authority to impose sanctions irrespective of the existence of subject matter jurisdiction.'" *Id.* at *1 n.2 (quoting *Willy v. Coastal Corp.*, 915 F.2d 965, 967 (5th Cir. 1990)).

defendant added to defeat diversity jurisdiction and we should retain jurisdiction and reinstate the judgment dismissing all claims against ATS.

Porter, Ashford, and Aeroframe moved to remand to state court. Aeroframe "adopt[ed] by reference the arguments posited or briefed by other counsel in this litigation," including "counsel for Michael Ashford" — the party to whom it is supposedly adverse.

The magistrate judge agreed with ATS's argument that there was a functional settlement between the parties such that they were no longer adverse. The magistrate judge recommended holding the agreement to be sufficient to remove the case because the "plaintiff and the nondiverse defendant enter[ed] into an irrevocable settlement agreement." Relevantly, Judge Davis, in his concurrence, had concluded that, if the nondiverse parties enter into an irrevocable settlement, a case becomes removable at that time. *Ashford*, 907 F.3d at 388 (Davis, J., concurring in the judgment). As noted, he concurred in the remand, though, because "no such agreement was ever produced in this case." *Id.* The magistrate judge also referred to the "multiple representations made by counsel about the lack of 'settlement' between the parties," and that the retainer agreement was unknown even to the Williams law firm, which was representing Aeroframe.

The magistrate judge further recommended finding there was now sufficient evidence the non-ATS parties were aligned from the inception of the litigation. This would also support remand under our statement in *Ashford* that "federal diversity-of-citizenship jurisdiction depends upon the state of things at the time of the action brought." *Id.* at 386 (opinion of the court, joined in the judgment only) (quotation marks and citation omitted).

The district court adopted the magistrate judge's recommendation to deny remand to state court.

In September 2020, the district court granted ATS's motion to consolidate 16 of the 17 separate lawsuits. The suit brought by Ashford became the lead case.

In October 2020, ATS filed a motion for summary judgment denying it had liability to any of the plaintiffs. It also sought dismissal of all the individual employees' claims against Aeroframe, arguing that the Cox-Porter retention agreement provided that these employees' only recovery would be a money judgment against ATS. Judgment in favor of ATS would therefore end the possibility of recovery on the employees' claims.

In April 2021, the magistrate judge recommended all claims against ATS by the employees, Aeroframe, and Porter be dismissed with prejudice. The magistrate judge, though, recommended rejecting ATS's suggestion that the employees' claims against Aeroframe be dismissed. The district court adopted this report and recommendation. The court entered summary judgment in favor of ATS, dismissing all claims. The court also entered monetary judgments in favor of the individual employees against Aeroframe.

The non-ATS parties timely appealed. They urge a vacatur of the judgment on the basis of lack of diversity jurisdiction. The appeal specifically seeks to have the monetary awards to the individual employee-*appellants* set aside for the same reason.

## DISCUSSION

Denial of a motion to remand is reviewed *de novo*. *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 882 (5th Cir. 2000). "Jurisdictional findings of fact are reviewed for clear error." *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008). What is required factually results from the rule that "diversity jurisdiction requires complete diversity — all of the

plaintiffs must be citizens of different states than all of the defendants." *Williams v. Homeland Ins. Co. of N.Y.*, 18 F.4th 806, 812 (5th Cir. 2021).

As we already discussed, the district court accepted the magistrate judge's recommendation to deny the motions to remand on two separate grounds. The first ground was that there was now sufficient evidence the non-ATS parties' interests had been aligned from the inception of the litigation. The second ground was that an irrevocable settlement agreement that eliminated adversity between the parties permitted removal under *Vasquez v. Alto Bonito Gravel Plant Corp.*, 56 F.3d 689, 693 (5th Cir. 1995).[5] We begin with the question of whether the parties were aligned from inception.

The non-ATS parties argue the district court erred in even considering whether Porter, Aeroframe, and the employees' interests were aligned from the inception of the litigation. They contend that ATS's second notice of removal did not make this argument. Instead, ATS's sole basis for removal was the alleged post-inception settlement between Aeroframe and the employees. Therefore, the magistrate judge's "*sua sponte* reconsideration" of this argument was improper. They further contend that this holding violates 28 U.S.C. § 1447(d), which states, "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." ATS maintains that alignment from inception has always been the basis for ATS's removals.

We find no error in the district court's reconsideration of its prior holding that the non-ATS parties' interests were not aligned from the inception of the litigation. ATS's second notice of removal argues that Porter was

---

[5] The existence of a settlement was supported by the April 15, 2014, email from Brown to her plaintiff-employee clients and the June 4, 2014, Cox-Porter retention agreement.

No. 22-30288
c/w Nos. 22-30185, 22-30186, 22-30187, 22-30188, 22-30189, 22-30190, 22-30191, 22-30192, 22-30193, 22-30194, 22-30196, 22-30198, 22-30201, 22-30207, 22-30209, 22-30212

"orchestrating Aeroframe employees to sue his defunct company" through lawyers at the Cox law firm. In the first paragraph of the notice of removal, ATS cited Exhibit 1 thereto, which is an email from Porter to Brown on October 1, 2013. Porter wrote: "I have three [suits] so far but I anticipate more as I am instructing previous employees to contact you to be added to the suit[]." ATS's notice of removal further relied on Porter's statement that he "has been meeting with Tom Filo for the past month." This reveals that Porter was working with Brown and Filo of the Cox law firm before Brown filed Ashford's suit on October 8, 2013.[6] Moreover, the same day ATS filed its second notice of removal on May 13, 2019, ATS filed in each of the non-Ashford cases a "Supplemental Notice of Additional Jurisdictional Facts Supporting Diversity Jurisdiction." Section II of the supplemental notice is entitled "[a]dditional facts regarding collusion among the parties and proper alignment," with numerous exhibits supporting those additional facts.

Further, during the May 14–15, 2019, hearing on ATS's motion for sanctions (*i.e.*, the day after the second notice of removal and supplemental notices were filed), ATS introduced several new pieces of evidence documenting the parties' collusion from inception. During the hearing, the magistrate judge stated that "we've seen a lot more information now that could result in there being a different finding" on whether there was alignment from inception. At the close of the December 10, 2019, hearing on the non-ATS parties' motions to remand, the magistrate judge granted ATS's unopposed oral motion to have all evidence adduced in connection with the sanctions hearing considered as evidence for purposes of the motions to remand. Additionally, the court invited the parties to file supplemental briefing

---

[6] This also shows that Porter had been working with Brown and Filo before Brown filed the first suit, *Cooley v. Aeroframe*, on September 24, 2013.

No. 22-30288
c/w Nos. 22-30185, 22-30186, 22-30187, 22-30188, 22-30189, 22-30190, 22-30191, 22-30192, 22-30193, 22-30194, 22-30196, 22-30198, 22-30201, 22-30207, 22-30209, 22-30212

addressing issues discussed at the hearing. The non-ATS parties neither objected nor filed supplemental briefing.

"We have held that issues raised for the first time in objections to the report of a magistrate judge are not properly before the district judge." *Finley v. Johnson*, 243 F.3d 215, 219 n.3 (5th Cir. 2001). If the non-ATS parties believed the magistrate judge had no right to reconsider the issue of proper alignment, they had ample opportunity to present their arguments to the magistrate judge. Having failed to do so, they cannot now argue such an impropriety.

We turn to the non-ATS parties' remaining argument that the district court's holding violates 28 U.S.C. § 1447(d). Although it is true that Section 1447(d) prohibits review or reconsideration of a remand order,[7] the district court here was not reconsidering a remand order. It was considering ATS's second removal and making a separate factual determination based on new evidence.

We have held that a defendant has a "right to seek subsequent removals after remand." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 492 (5th Cir. 1996). If the defendant fails to remove on its initial pleadings, it may file a second removal petition "when subsequent pleadings or events reveal a new and different ground for removal." *Id.* at 493 (emphasis omitted). In *S.W.S. Erectors*, we held that the party could seek a second removal "using newly acquired facts from [a] deposition transcript" because that "constitute[d] a new paper or event that changed the facts regarding the removableness of the case." *Id.* at 494.

---

[7] "An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." 28 U.S.C. § 1447(d).

No. 22-30288
c/w Nos. 22-30185, 22-30186, 22-30187, 22-30188, 22-30189, 22-30190, 22-30191, 22-30192, 22-30193, 22-30194, 22-30196, 22-30198, 22-30201, 22-30207, 22-30209, 22-30212

The same is true here. The district court's original ruling was that there was insufficient evidence to hold the interests of Ashford, Aeroframe, and Porter were aligned from the inception of the litigation. *Ashford*, 907 F.3d at 387. That finding was not appealed to this court. *Id.* At that point, the sole evidence of the parties' aligned interests was the April 15, 2014, email from Brown to her clients. *See Ashford v. Aeroframe Servs., L.L.C.*, No. 2:14-CV-992, 2015 WL 13650549, at *8–9 (W.D. La. Jan. 30, 2015). In the record now are several new pieces of evidence, including deposition transcripts, admitted during the hearings on May 14–15, 2019, and December 10, 2019. Given these new factual bases supporting collusion from inception, we agree with ATS that the district court was free to revisit the issue of when the collusion began to properly align the parties.

The next question is whether the magistrate judge was correct to recommend, and the district court was correct to find, that the additional evidence was sufficient to hold that the non-ATS parties were aligned from the inception of the litigation.

Diversity jurisdiction requires "an actual, substantial controversy between citizens of different states." *Zurn Indus., Inc. v. Acton Constr. Co.*, 847 F.2d 234, 236 (5th Cir. 1988). The pleadings do not control, and the court must "arrange the parties according to their sides in the dispute." *Id.* (citation omitted). We determine proper alignment by asking "whether the parties with the same 'ultimate interests' in the outcome of the action are on the same side." *Griffin*, 621 F.3d at 388 (quoting *Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*, 723 F.2d 1173, 1178 (5th Cir. 1984)). "[T]he burden of establishing jurisdiction rests upon the party seeking to invoke it." *Gaitor v. Peninsular & Occidental S.S. Co.*, 287 F.2d 252, 253 (5th Cir. 1961).

No. 22-30288
c/w Nos. 22-30185, 22-30186, 22-30187, 22-30188, 22-30189, 22-30190, 22-30191, 22-30192, 22-30193, 22-30194, 22-30196, 22-30198, 22-30201, 22-30207, 22-30209, 22-30212

The non-ATS parties argue that realignment is improper because the employees' "primary purpose was to recover unpaid wages against Aeroframe and ATS." They contend that the employees had a viable claim against Aeroframe at the inception of the case, and so, inferring any motivation of Porter to avoid being sued personally, or any reluctance of Plaintiffs' counsel to bring the suit before she knew there was a deep pocket to pursue, is irrelevant. Further, they argue the new evidence cited by ATS in its second notice of removal is insufficient to show that either Aeroframe or Porter was adverse to ATS at inception.

In considering the propriety of removal, we now know that before filing any suit, Brown of the Cox law firm was uninterested in representing the employees because she knew Aeroframe was insolvent. We also now know that Porter, as sole principal of Aeroframe, then spoke with Filo, who previously represented Porter/Aeroframe, and was Brown's partner at the same Cox law firm. In that conversation, Porter confirmed Aeroframe was being pursued by numerous creditors, including former employees, who had not been paid several of their final paychecks. We now know Porter also informed Filo that he wanted to pursue a suit against ATS, which Porter blamed for the closure of Aeroframe. Filo informed Brown of these facts, and Brown included ATS in the lawsuits she was now willing to file.

We have also learned from an October 1, 2013, email to Brown that Porter was discussing the Aeroframe/ATS lawsuits with Filo before Brown filed the first suit on September 24, 2013. We know from that email that Porter was explicitly "instructing previous employees to contact" Brown to be "added to the suit[]." Finally, Porter asked Brown for "confirmation" that Aeroframe would be granted an extension to answer the complaints she was filing on behalf of the plaintiffs-employees. We agree with the magistrate judge that this exchange is telling because it reveals that "Porter speaks for

17

Aeroframe and Brown knows it," and that "Brown had no intention of naming Porter personally in the litigation." Moreover, where former employees did *not* retain counsel with the Cox law firm and filed suit to retrieve their paychecks, those suits named Porter personally, alleging he diverted funds from Aeroframe.

We have further learned that the Williams law firm, which represented Aeroframe, was not necessarily "separate counsel" to Porter's own counsel as previously believed. *Ashford*, 907 F.3d at 388 n.2 (Davis, J., concurring in the judgment). In fact, Porter and Filo met with the Williams law firm in January 2014 to discuss its representation of Aeroframe. Around January 30, 2014, Porter employed the Williams law firm to represent Aeroframe in a "[b]reach of contract claim against [ATS] and for all damages arising out of that breach of contract." The contingency fee employment contract of employment does not mention defending against the claims of the Aeroframe employees, further supporting ATS's argument that Porter and Filo agreed to target ATS via Aeroframe. Furthermore, the Williams law firm had an "extensive history" with the Cox law firm, which included "vested mutual financial interest[s] in numerous cases together," such that Porter, acting for Aeroframe, signed a conflict waiver. Finally, we learned that Porter's original answer and incidental demand on April 7, 2014, — which was supposedly *pro se* — was actually drafted by Filo of the Cox law firm.

This court's original holding in this case acknowledged that "federal courts are not bound by the labels the parties give themselves in the pleadings." *Id.* at 387 (citing *Zurn*, 847 F.2d at 236). It concluded *Zurn* stands for the premise that the "parties' alignment for jurisdictional purposes is to be determined by the plaintiff's principal purpose *for filing suit*." *Id.* (emphasis in original) (quotation marks and citation omitted). It emphasized that "[b]ecause the magistrate judge found that Ashford's 'principal purpose' for

18

suing Aeroframe was legitimate (a finding that no one appeals), fidelity to *Zurn* requires relinquishing the case." *Id.*

Using that same legal standard, the new evidence that became available after our remand allowed the district court to re-evaluate the plaintiff's principal purpose for filing suit. We now know the employees, represented by Brown, were not interested in pursuing a claim against Aeroframe, which she understood had no assets. We now know that, instead, Brown and Filo of the Cox law firm were, from the inception of litigation, attempting to pursue deep-pocketed ATS in a friendly state court forum on behalf of Aeroframe's principal and Filo's client, Porter.

Given this new information, we hold the non-ATS parties' interests were aligned from the inception of litigation.[8] Because of this holding, we

---

[8] The employees also suggest on appeal that the amount in controversy does not exceed the requisite $75,000. We agree with ATS that the amount in controversy is facially apparent. The magistrate judge found in 2015 that Ashford's pleading facially met the jurisdictional amount, *Ashford*, 2015 WL 13650549, at *11, as did Judge Jones in dissent (the court did not reach the issue), *Ashford*, 907 F.3d at 397 (Jones, J., dissenting). The employees did not object to the magistrate judge's report and recommendations finding that the amount in controversy was met when she denied remand to state court, or to the district court's adoption of the recommendation.

In any event, Ashford's complaint alleged he was entitled to recover "all wages due for services already performed, including all accrued and unused or purchased vacation and other paid benefits not received; actual damages including lost future wages; statutory penalties; statutory attorneys' fees; costs of these proceedings; and interest thereon." Louisiana law forbids plaintiffs in state courts from pleading a specific numerical value of damages. *Gebbia*, 233 F.3d at 882 (citing LA. CODE CIV. PROC. art. 893). Therefore, when a case originally filed in a Louisiana state court is removed to federal court on the basis of diversity, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000. *Id.* (citing *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999)). A defendant may meet this burden by either: (1) showing it is facially apparent that the amount in controversy exceeds $75,000; or (2) setting forth facts in its removal petition supporting such a finding. *Luckett*, 171 F.3d at 298. As the magistrate judge wrote in 2015, "[a]lthough past wages due may be negligible, future lost

No. 22-30288
c/w Nos. 22-30185, 22-30186, 22-30187, 22-30188, 22-30189, 22-30190, 22-30191, 22-30192, 22-30193, 22-30194, 22-30196, 22-30198, 22-30201, 22-30207, 22-30209, 22-30212

need not address the magistrate judge's alternative recommendation that the Cox-Porter retention agreement reveals the parties had a post-inception settlement, rendering the cases removable.

After finding we have jurisdiction, we need turn only briefly to the merits. The non-ATS parties do not appeal or address in their briefs any challenge regarding the merits of the grant of summary judgment in favor of ATS and dismissal of all claims against ATS with prejudice. They have therefore waived any such arguments. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021).

Finally, Aeroframe argues that three cases, *Day*, *Neathammer*, and *Jackson*, should be remanded because, as a third-party defendant in those cases, ATS had no procedural right to remove them. *See Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1748 (2019). ATS agrees that *Day* is not properly before this court because the judgment appealed by Aeroframe is not final. Regarding *Neathammer* and *Jackson*, those cases were dismissed with prejudice on February 1, 2021. Aeroframe has not appealed the dismissal of those cases. Aeroframe appeals only the post-dismissal denial of its motions for a hearing on its motion to remand. Such motions are treated like a Federal Rule of Civil Procedure 59(e) or 60(b) motion, and the district court's denials of them are reviewed for abuse of discretion. *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 181 (5th Cir. 2012). We agree with ATS that there was no abuse of discretion in the district court's denial of Aeroframe's post-dismissal motions for hearing.

---

wages, future benefits lost, and attorney fees for the prosecution of this matter place the amount in controversy well above the minimum threshold." *Ashford*, 2015 WL 13650549, at *11. We agree.

No. 22-30288
c/w Nos. 22-30185, 22-30186, 22-30187, 22-30188, 22-30189, 22-30190, 22-30191, 22-30192, 22-30193, 22-30194, 22-30196, 22-30198, 22-30201, 22-30207, 22-30209, 22-30212

We AFFIRM the district court's dismissal of all claims against ATS in the relevant cases. We DISMISS the appeals in *Day*, 22-30190, *Barreda*, 22-30193, and *Cooley*, 22-30188. As only jurisdictional arguments are made here, none on the merits, we AFFIRM the individual judgments against Aeroframe in favor of the employees whose appeals we have not dismissed.